Karen L. **KEWLEY**, Petitioner,

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES,**
Respondent.

No. 97–3458.

United States Court of Appeals,
Federal Circuit.

Aug. 20, 1998.

---

Daniel Minahan, Minahan & Shapiro, P.C., Lakewood, Colorado, argued for petitioner.

Dorann E. Banks, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., argued for respondent. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Kathryn A. Bleecker, Assistant Director.

Before MICHEL, LOURIE, and GAJARSA, Circuit Judges.

MICHEL, Circuit Judge.

Karen L. Kewley, a probationary employee with the Department of Health and Human Services ("agency") who had made a "protected disclosure" under the Whistleblower Protection Act of 1989, Pub.L. No. 101–12, 103 Stat. 16 (1989) (codified at scattered sections of 5 U.S.C.) ("WPA"), petitions for review of the final decision of the Merit Systems Protection Board ("Board") denying her request for corrective action under the provisions of 5 C.F.R. § 1209.2 (1998), in an individual right of action ("IRA") arising under 5 U.S.C. § 1221(e) (1994). The initial decision of the Administrative Judge· ("AJ"), see *Kewley v. Department of Health & Human Servs.*, No. DE–1221–96—0387–W–2 (M.S.P.B. April 1, 1997), became the final decision of the Board on August 15, 1997, when the full Board denied review. Petitioner argues that she established a *prima facie* case of retaliation, *i.e.*, that her disclosure was a contributing factor to her removal, simply because the removal decision was made within six weeks of her protected disclosure by one who knew about it. Knowledge of the protected disclosure was undisputed and the AJ found the timing "reasonable" within the meaning of the WPA, but nevertheless ruled retaliation had not been established, *prima facie*. We hold this ruling to be contrary to 5 U.S.C. § 1221(e) (1994) as properly construed and thus legal error. But, we further hold, the error was harmless. Substantial evidence supported the AJ's alternative ruling that the agency established by clear and convincing evidence that it would have removed Ms. Kewley, regardless of her protected disclosure. Therefore, we affirm.

## BACKGROUND

On November 14, 1993, Ms. Kewley was appointed to a GS–11 competitive career-conditional position of clinical psychologist and assigned to the agency's Billings Area

Indian Health Service, Fort Peck Service Unit, located in Poplar, Montana. Ms. Kewley's job, under an appointment which was subject to completion of a one-year probationary period, was to provide psychological evaluations, consultations, and therapy for schoolchildren, develop school-based mental health programs, and act as a liaison with outreach services. In late January 1994, Margene Tower, the Billings Area Mental Health Program Officer, initiated an investigation into Ms. Kewley's work performance as a probationary employee. That investigation was unrelated to the protected disclosure which was filed in February 1994.

In an undated memorandum, determined to have been sent on February 4, 1994, Ms. Kewley informed her supervisor, Susan Fifer, Director of Behavioral Health, through Bob Camper, Clinical Director, and Kenny Smoker, Service Unit Director, of her belief that the agency's practice of allowing non-crisis counseling with minor children without first obtaining consent from their legal guardian was a violation of specific ethical and legal requirements. This was the protected disclosure. In a staff meeting several weeks later, the agency addressed Ms. Kewley's memorandum by handing out new informed consent forms and requiring their use, just as she had suggested.

Thereafter, in a letter signed by Mr. Camper, for Ms. Fifer, dated March 16, 1994, Ms. Kewley received notice that her employment was to be "terminated" effective March 19, 1994, for unsatisfactory performance. The termination was predicated on four reasons: (1) her inability to work effectively in the cross-cultural setting; (2) her failure to establish effective working relationships with community agencies or schools; (3) her inability, in the majority of cases, to establish an ongoing therapeutic relationship with clients; and (4) her continued resistance and refusal to participate in active child abuse cases.

Ms. Kewley filed an appeal with the Board on April 4, 1994, which was dismissed for

failure to make a non-frivolous showing of Board jurisdiction. The Board found that, as a probationary employee, she did not to have a right to appeal. Ms. Kewley then filed a complaint with the Office of Special Counsel ("OSC")[1] in which she claimed that she was terminated because of her whistleblowing activity. Nearly two years later, on March 22, 1996, the OSC completed its investigation, finding that Ms. Kewley's protected disclosure was not a contributing factor in the agency's decision to remove her.

Having exhausted her remedy with OSC, Ms. Kewley then filed an IRA appeal with the Board, in accordance with 5 U.S.C. § 1221, on April 23, 1996. The appeal, however, "was dismissed without prejudice on August 7, 1996, to allow the parties time to resolve difficulties over discovery and scheduling." *Kewley,* slip op. at 2. During this time, the agency did not comply with two requests for discovery from Ms. Kewley. After a prehearing order from the AJ, as well as a motion for sanctions, the agency had still not submitted the requested evidence. Ms. Kewley then re-filed her IRA on August 12, 1996.

Based on the agency's failure to meet the applicable discovery deadlines, the AJ granted Ms. Kewley's motion for sanctions. In his pre-hearing summary and order, the AJ stated that the agency's failure to comply with the order on discovery precluded it from relying on the "first three of its four reasons" for removing Ms. Kewley. He did allow the agency, however, to rely on the fourth reason, Ms. Kewley's continued resistance to participating in active child abuse cases, because sufficient evidence on that issue had been produced by the agency. Moreover, Ms. Kewley was able to present additional evidence on her own behalf to support her assertions on that issue.

At the September 17, 1996 hearing before the AJ, Ms. Kewley was the only witness. She testified on her own behalf and was cross-examined. The AJ found that Ms.

---

[1]. A probationary employee, who otherwise has no right of appeal to the Board absent a prohibit-

ed personnel practice, must first file a complaint with the OSC. *See* 5 U.S.C. § 1214(a)(3) (1994).

Kewley failed to show that the protected whistleblowing disclosure was a contributing factor in her removal, and that, even if it had been, the agency demonstrated by clear and convincing evidence, as defined in 5 C.F.R. § 1209.4(d), that it would have removed her anyway. The evidence supporting this decision consisted of three pieces: (1) a confidential memorandum from Ms. Tower ("Tower memorandum"), recording her interview with an outside observer, Terry Boyd, a Bureau of Indian Affairs employee with whom Ms. Kewley had worked and who reported Ms. Kewley's "highly negative attitude" towards her participation in child abuse interviews; (2) a "to whom it may concern" letter dated March 17, 1994, from Connie Fox, Secretary of the Mental Health Program ("Fox letter"), which, although written in support of Ms. Kewley, was found to corroborate the agency's claim; and (3) the testimony of Ms. Kewley that she indeed declined to participate in child abuse cases because she did not feel it was compatible to be both the therapist and investigator.

## DISCUSSION

In determining whether reprisal for whistleblowing activities occurred and whether corrective action is warranted, the Board is required by section 14 of the WPA, codified at 5 U.S.C. § 1221(e)(1)(A) & (B) (1994), to determine whether Ms. Kewley has shown by a preponderance of the evidence that the disclosure was "a contributing factor" in the agency's personnel action. If the disclosure was a contributing factor, the burden of proof shifts to the agency. Then the AJ must determine whether the agency has proven by clear and convincing evidence that it would have taken the same personnel action in the absence of the disclosure. *See* 5 U.S.C. § 1221(e).

This court must affirm a Board decision unless the petitioner establishes under 5 U.S.C. § 7703(c) (1994) that it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without adherence to procedures re-

quired by law, rule, or regulation; or (3) unsupported by substantial evidence. *See Koyen v. Office of Personnel Management,* 973 F.2d 919, 922 (Fed.Cir.1992).

## I.

■ Ms. Kewley argues that after finding the timing to be "reasonable," the AJ may not lawfully consider evidence to rebut that finding because Congress has mandated that the burden of proof thereby shifts to the agency and that the agency must meet a higher standard of proof. She argues, therefore, that because the deciding official indisputably knew of the protected disclosure and the removal action was found to have occurred within a reasonable time of that disclosure, she *per se* met her statutory burden under section 1221(e)(1) to show, *prima facie,* that the disclosure was a contributing factor in the agency's personnel action. The AJ, however, held otherwise.

## A.

The relevant part of section 1221(e)(1) states that:

> The employee may demonstrate that the disclosure was a contributing factor in the personnel action through circumstantial evidence, such as evidence that—
>
> (A) the official taking the personnel action knew of the disclosure; and
>
> (B) the personnel action occurred within a *period of time* such that a *reasonable* person could conclude that the disclosure was a contributing factor in the personnel action.

5 U.S.C. § 1221(e)(1) (emphasis added).

As shown in the legislative history and consistent with 5 U.S.C. § 1221(e)(1), Congress intended that satisfaction of this "knowledge/timing" test establishes, *prima facie,* that the disclosure was a contributing factor to the personnel action. When Congress amended the WPA in 1994, *see* Pub.L. No. 103–424, 108 Stat. 4361 (1994), it explicit-

ly vitiated the decision of this court in *Clark v. Department of the Army*, 997 F.2d 1466 (Fed.Cir.1993), which held that the WPA did not incorporate the *per se* knowledge/timing test. The applicable legislative history states that:

> The [Federal Circuit] noted that S. 20, the bill which was ultimately enacted by the Congress in 1989, "lacks the language of S. 508 which provided for the knowledge/timing test."
>
> In fact, however, the joint explanatory statement that accompanied both S. 508 and S. 20 expressly stated that the managers intended the *per se* test to apply to that bill.

S. Rep. No. 103–358, at 7 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3548, 3556. We followed Congress's new test in *Horton v. Department of the Navy*, 66 F.3d 279 (Fed.Cir. 1995), in which we held that "the circumstantial evidence of knowledge of the protected disclosure and a reasonable relationship between the time of the protected disclosure and the time of the personnel action will establish, *prima facie*, that the disclosure was a contributing factor to the personnel action." *Id.* at 284.

Even prior to the 1994 amendments to the WPA, we recognized Congress's intent to ease the whistleblower's burden of proving that the protected disclosure did satisfy the "contributing factor" test. *See Marano v. Department of Justice*, 2 F.3d 1137, 1140 (Fed.Cir.1993) (stating that "the legislative history of the WPA emphasizes that 'any' weight given to the protected disclosures, either alone or even in combination with other factors, can satisfy the 'contributing factor' test").

In the instant action, it is undisputed that the official taking the personnel action, Ms. Fifer, knew of Ms. Kewley's protected disclosure. The AJ could only hold, therefore, that the knowledge requirement of subsection (A) of section 1221(e)(1) had been satisfied. As to the timing requirement of subsection (B), however, the AJ found that Ms. Kewley failed to demonstrate preponderantly that

the personnel action was a contributing factor in her removal. The AJ found that the agency's timely and favorable response to the disclosure and the lack of evidence of any animus by Ms. Fifer toward Ms. Kewley outweighed the six-week period of time between the disclosure and initiation of the removal action. The AJ specifically reasoned that "the appellant has failed to show how the agency on the one hand reacted affirmatively to her disclosure, but then on the other hand retaliated against her for that disclosure." *Kewley*, slip op. at 6.

The agency argues that its "swift, effective action" in accepting Ms. Kewley's suggestions submitted in her protected disclosure and implementing of her suggested changes demonstrated that no retaliatory animus was evident. This contention, however, postulates a requirement that the whistleblower supply proof of hostility by the deciding official. We cannot find any such requirement in the statute. In fact, as we held in *Marano*:

> [Even] though evidence of a retaliatory motive would still suffice to establish a violation of [the employee's] rights under the WPA ... a whistleblower need not demonstrate the existence of a retaliatory motive on the part of the employee taking the alleged prohibited personnel action in order to establish that [her] disclosure was a contributing factor to the personnel action....

2 F.3d at 1141 (citing S.Rep. No. 100–413 (1988)). Moreover, the legislative history of the 1994 amendments to the WPA compels a different outcome with respect to the agency's argument on this issue:

> The Committee amendment reaffirms that Congress intends for a[sic] agency's evidence of reasons why it may have acted (other than retaliation) to be presented as a part of the affirmative defense and subject to the higher burden of proof.

S. Rep. No. 103–358, at 7 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3548, 3556.

■ As Congress has made clear, the knowledge/timing test of section 1221(e)(1)

must be taken as a whole, but no other factor may be taken into account. In other words, the combination of subsections (A) and (B) must be weighed together to determine if the whistleblowing employee has met her *prima facie* burden of showing that the protected disclosure was "a contributing factor." If a whistleblower demonstrates both that the deciding official knew of the disclosure and that the removal action was initiated within a reasonable time of that disclosure, no further nexus need be shown, and no countervailing evidence may negate the petitioner's showing. The burden of persuasion thus shifts to the agency to prove by clear and convincing evidence, a higher standard, that it would have taken the action even in the absence of the protected disclosure. *See* 5 U.S.C. § 1221(e)(2). Evidence such as responsiveness to the suggestions in a protected disclosure or lack of animus against petitioner may form part of such a rebuttal case. Such evidence is not, however, relevant to a petitioner's *prima facie* case under section 1221(e)(1)(A) and (B).

**B.**

The agency argues that allowing whistleblowers to establish their *prima facie* case simply by filing protected disclosures only a short period of time before their removal will mean probationary employees doing a substandard job will become permanent employees. We disagree. Once the whistleblower has established a *prima facie* case under section 1221(e)(1), the agency, pursuant to section 1221(e)(2), may then prove, by clear and convincing evidence, that it would have removed the employee anyway. Furthermore, Congress explicitly addressed this argument when it originally promulgated the WPA. It explained its reason for heightening the agency's standard of proof to clear and convincing:

> The Committee does not intend that employees who are poor performers escape sanction by manufacturing a claim of whistleblowing; at the same time, whistleblowers must not be discouraged by agen-

cies being able to use any possible flaw in an employee's work record as an excuse for retaliation.

S. Rep. No. 100–413, at 15 (1988).

Therefore, we require the Board and its AJs to weigh the deciding official's knowledge of the protected disclosure in combination with the reasonable time period, without more, to determine whether that protected disclosure is a contributing factor in the personnel action.

**C.**

■ Congress did not state a specific period of time under subsection (B), and did not "give the Board the authority to define a specific time period for all cases." *Id.* at 14. We, likewise, do not state a specific period of time for all cases. Congress did suggest, however, that "an action taken within the same performance evaluation period would normally be considered within a 'reasonable time.'" *Id.* In fact, Congress has given clear guidance to the Board to "use this reasonable time standard liberally." *Id.*

■ Ms. Kewley asserts on appeal that the AJ erred in finding against her on subsection (B) because in order to satisfy that subsection she only needed to show that the personnel action occurred within a reasonable time of when she made the protected disclosure. We agree. Here the time lapse was only six weeks, well within her performance evaluation period as a probationary employee of one year, expiring in the fall of 1994. She further contends that, once the reasonable time showing had been made, it was error for the AJ to rely on the agency's evidence to determine that the disclosure was *not* a contributing factor. We agree. Although the AJ found that the personnel action was initiated within a month and a half of the protected disclosure, he credited other agency evidence in finding that that time period was not dispositive of whether the disclosure was a contributing factor. Because section 1221(e)(1) guarantees that the employee establishes a *prima facie* case sim-

ply by demonstrating that the knowledge *and* reasonable time requirements were met, and because the agency's affirmative defense under section 1221(e)(2) requires a higher burden of proof, we hold that the AJ's causation finding that Ms. Kewley's protected disclosure was not "a contributing factor" was legally erroneous as contrary to the statutory command as correctly construed.

## II.

 After an employee establishes that a protected disclosure was a contributing factor, the agency must prove by clear and convincing evidence that it would have taken the action to remove the employee, even in the absence of the protected disclosure. *See Horton*, 66 F.3d at 284. In this case, even though the AJ erred in his holding as to section 1221(e)(1)(B), he expressly found an alternative basis for denying Ms. Kewley relief; after assuming, *arguendo*, that the protected disclosure was a contributing factor, the AJ further held that the agency did prove by clear and convincing evidence on the record that it would have removed Ms. Kewley, even in the absence of her disclosure.

The AJ found that the agency's only litigable basis to support Ms. Kewley's removal for unsatisfactory work performance, based on her resistance to participating in child abuse cases, was supported on the record by three significant sources of evidence. First, it was supported by the Tower memorandum. Second, it was supported by the Fox letter, even though offered by Ms. Kewley herself. Third, it was supported by Ms. Kewley's own testimony. We address each of these evidentiary bases in turn. In regard to this evidence, expressly relied upon by the AJ, we must affirm the finding of independent causation unless the petitioner establishes that it is unsupported by substantial evidence. *See* 5 U.S.C. § 7703(c)(3).

## A.

 Ms. Kewley contends that the Tower memorandum cannot be relied upon to support her removal because it constituted hearsay evidence, and was therefore not substantial. It has long been settled, however, that hearsay evidence may be used in Board proceedings and may be accepted as preponderant evidence even without corroboration if, to a reasonable mind, the circumstances are such as to lend it credence. *See Hayes v. Department of the Navy*, 727 F.2d 1535, 1538 (Fed.Cir.1984). In addition, we have held that procedural matters such as the admissibility of evidence, including hearsay, fall within the sound discretion of the Board and its AJs. *See Curtin v. Office of Personnel Management*, 846 F.2d 1373, 1378–79 (Fed. Cir.1988). Certainly, there was no abuse of discretion in admitting the Tower memorandum as evidence.

The AJ found the probative value of the Tower memorandum to constitute significant support for the agency's burden of proof. The Tower memorandum was the result of an investigation into Ms. Kewley's performance as a probationary employee and not an investigation of her whistleblowing activity. Moreover, Ms. Tower had begun her "extensive investigation" into Ms. Kewley's job performance *before* the protected disclosure was submitted to the agency. In addition, the memo was signed by Ms. Tower, and because of the expressly confidential nature of the memorandum, the AJ found that its content was candid and credible. The AJ likewise found that, because Ms. Tower had "a professional responsibility to make accurate determinations about the quality of care given by the staff," *Kewley*, slip op. at 8, there was all the more reason to credit her letter. Finally, Ms. Tower was not the deciding official; Ms. Fifer was.

Furthermore, although Ms. Kewley was given the opportunity at the hearing to rebut the evidence supporting the agency's position by calling any witnesses she chose, she did not do so. Her counsel conceded at oral argument that Ms. Kewley had foregone her opportunity to cross-examine Ms. Tower, or Mr. Boyd, on whose statement about Ms. Kewley's refusal to participate in child abuse cases Ms. Tower relied. Once the agency

presented its evidence in support of its charges of independent causation for the removal, Ms. Kewley needed to rebut the agency's evidence or risk a finding that the agency had successfully established its affirmative defense to her *prima facie* case under section 1221(e)(2). One option would have been to call those persons as hostile witnesses. While the burden of proving by clear and convincing evidence that it would have removed Ms. Kewley anyway remains with the agency, Ms. Kewley had full opportunity to discredit or contradict the evidence supporting the agency. *Cf. Hale v. Department of Transp.*, 772 F.2d 882, 885 (Fed.Cir.1985) (in an agency removal action, "once the agency has made a *prima facie* showing [to support removal charges by a preponderance of the evidence], the burden of going forward with evidence to rebut that showing shifts to the employee").

The AJ's decision to rely on the Tower memorandum was reasonable, based on the cited factual circumstances surrounding its creation, and we conclude that the memorandum afforded significant support for Ms. Kewley's removal.

### B.

 In her "to whom it may concern" letter, Ms. Fox contended that because Ms. Kewley was "never assigned any sexually abused children to interview I do not understand how [Ms.] Fifer can accuse her of not doing her job in this respect." Letter of Ms. Connie Fox, Mar. 17, 1994. The AJ, however, found that because "it is apparent that the appellant worked with abused children and had been approached by Boyd to conduct interviews, her reluctance to participate in that aspect of the case is borne out by Fox's statement that the appellant was not assigned any sexual abuse investigation cases." *Kewley,* slip op. at 8. Because the Fox letter was in the record and the AJ reasonably relied on it as evidence in support of the agency's allegation as stated, we conclude that the Fox letter was significant evidence supporting the AJ's decision.

### C.

 As the finder of fact, the AJ is in a unique position to evaluate the evidence on the record before him. During the hearing, Ms. Kewley testified on her own behalf and was subject to cross-examination. The AJ found that, rather than rebutting the agency's position, one of Ms. Kewley's statements on direct examination actually confirmed the agency's charge that she was indeed reluctant to investigate child abuse allegations and was therefore not performing in a satisfactory manner. In his decision, the AJ states that "the appellant did not deny that she was reluctant to be involved in child abuse investigation, but rather demonstrated this to be true when she testified how her role as a therapist working with abused children and their parents conflicted with the role of being involved in a child abuse investigation." *Id.*

Ms. Kewley asserts that her statement about the reluctance to conduct these interviews was directly related to the informed consent issue and thus related to her protected disclosure. Although this is not a trivial argument, Ms. Kewley's testimony did not persuade the AJ that her sole motivation for refusing to work was limited only to the parental consent forms and she does not demonstrate to us that the AJ's finding has only unsubstantial evidentiary support. Thus, the finding by the AJ that Ms. Kewley's statement actually supports the agency's allegation is not reversible and constitutes further evidence on which he based his ultimate ruling. Therefore, we conclude that Ms. Kewley's live testimony constituted significant evidence upon which the AJ properly relied as support for his decision.

Although we need not decide if each of these three pieces of evidence, by itself, could have constituted clear and convincing proof of independent causation, we do hold that taken together, they could have, and the AJ's finding to that effect is supported by substantial evidence.

### III.

 One additional argument raised by the petitioner is that her status as a proba-

tionary employee should not have affected her right as a whistleblower to challenge her removal to the Board as retaliatory. Ms. Kewley argues that the AJ's statement that he had a limited scope of review in addressing her removal was used to lower the agency's burden of proving that it would have fired her, even in the absence of the protected disclosure. We disagree.

As a probationary employee Ms. Kewley's right to obtain Board review of the agency's removal decision is restricted by statute and regulation. *See* 5 U.S.C. § 7511 (1994); 5 C.F.R. § 315.806(b) (1998). In fact, the only type of Board review a probationary employee is entitled to is an IRA arising under 5 U.S.C. § 1221, which is based upon a prohibited personnel practice as described in 5 U.S.C. § 2302(b)(8) (1994), here retaliation. Beyond the allegations brought under such an IRA, however, the Board may not address the merits of the agency's removal action against a probationary employee other than on the narrow grounds, not applicable here, of 5 C.F.R. § 315.806 (1998) (appeal permitted when adverse action was based on marital status, partisan political reasons, or certain pre-employment conditions). Because of these statutory and regulatory restrictions, the AJ is required to narrow the scope of his review to address only the IRA allegations. That is all the cited statement did and hence it could not be error.

Even though Ms. Kewley was a probationary employee and the AJ had a limited scope of review, the agency was still required by statute to meet the burden of proof of clear and convincing evidence, set forth in 5 U.S.C. § 1221(e)(2), and was required to show that it would have discharged Ms. Kewley, even in the absence of her protected disclosure. Because the AJ properly limited his scope of review to only the whistleblower allegations, reasonably considered all the evidence of record, and found on the basis of substantial evidence that the agency demonstrated by clear and convincing evidence that Ms. Kewley resisted becoming involved in child abuse investigations, we hold that he acted correctly.

## CONCLUSION

The AJ's finding under 5 U.S.C. § 1221(e)(1)(B), despite the temporal proximity of her disclosure to her removal, that Ms. Kewley did not *prima facie* prove that her disclosure was a contributing factor, was error. However, because the AJ's finding under 5 U.S.C. § 1221(e)(2) that the agency established by clear and convincing evidence that it would have removed Ms. Kewley, even in the absence of her protected disclosure, was supported by substantial evidence, we hold that the AJ's finding pursuant to section 1221(e)(1)(B), was therefore harmless error. This decision sustaining her removal is therefore

*AFFIRMED.*