Carmelo RODRIGUEZ, Petitioner,

v.

DEPARTMENT OF JUSTICE, Respondent.

No. 01–3378.

United States Court of Appeals, Federal Circuit.

Jan. 9, 2002.

Before SCHALL, BRYSON, and DYK, Circuit Judges.

## DECISION

PER CURIAM.

Carmelo Rodriguez petitions for review of the final decision of the Merit Systems Protection Board ("Board"), No. SF–0731–00–0646–I–1, that sustained the Immigration and Naturalization Service's ("agency's") denial of his application for an appointment restoring him to the position of Border Patrol Agent. We *affirm.*

## DISCUSSION

### I.

In 1987, Mr. Rodriguez completed an application to become a Border Patrol Agent. As part of the background check process, he was required to complete Standard Form 86 ("SF–86"), a questionnaire for sensitive positions. In response to a question on the SF–86 form asking if he had ever been arrested, Mr. Rodriguez answered "No," despite the fact that he had previously been arrested twice: once for burglary, and once for attempted burglary.

On December 7, 1987, Mr. Rodriguez was appointed to the position of Border Patrol Agent. On September 25, 1991, an incident occurred involving alleged misconduct by Mr. Rodriguez while on duty. The agency's Office of the Inspector General ("OIG") undertook an investigation. On September 17, 1992, the OIG issued its report of the investigation. The agency determined that the OIG's findings were sufficiently severe that Mr. Rodriguez should be removed from Federal service effective February 9, 1993. The agency concluded that Mr. Rodriguez (i) had abused his authority by improperly seizing and retaining a Mexican woman's border crossing card without any legal basis to do so; (ii) had failed to follow procedures for voiding a border crossing card; and (iii) had lied under oath in connection with the OIG's investigation of the incident.

Mr. Rodriguez appealed his removal to the Board. On June 2, 1993, the issue of Mr. Rodriguez's removal was settled in a written settlement agreement (the "Settlement Agreement"). Under the terms of the Settlement Agreement, Mr. Rodriguez agreed to resign in lieu of having a removal action in his record. He also agreed to withdraw his appeal and to waive his right to seek restoration or reemployment for a period of five years. In addition, he agreed not to apply for any law enforcement position for five years.

In 1998, five years after the Settlement Agreement was executed, Mr. Rodriguez notified the agency that he wished to apply for the position of Border Patrol Agent. Because Mr. Rodriguez had a break in Federal service of more than one year, and because he had not had a background investigation in more than three years, he was required to undergo a background screening. Accordingly, Mr. Rodriguez was required to submit a second SF–86. Mr. Rodriguez executed his second SF–86 (the "1999 SF–86") on May 5, 1999.

In his 1999 SF–86, Mr. Rodriguez was required to disclose (i) all current and former spouses; and (ii) certain specified relatives and associates. Mr. Rodriguez responded that he had one former spouse. He failed to disclose another former spouse whom he had divorced in 1980. He also failed to disclose that he had a son, Carmelo Anthony Rodriguez, born in 1987.

On February 25, 2000 the agency determined that Mr. Rodriguez was not suitable for appointment to the position of Border Patrol Agent. Mr. Rodriguez appealed the agency's determination to the Board. On January 4, 2001, the administrative judge ("AJ") to whom the case was assigned sustained the action based on (i) Mr. Rodriguez's failure to disclose his two prior arrests on his 1987 SF–86; (ii) his failure to list his former wife and son on his 1999 SF–86; and (iii) his prior misconduct in the September 1991 incident and his lying under oath in the subsequent investigation. The AJ concluded that Mr. Rodriguez's conduct impacted the efficiency of the service by jeopardizing the agency's accomplishment of its duties and responsibilities and by interfering and preventing effective service in the position of Border Patrol Agent. The AJ's initial decision became the final decision of the Board when the Board denied Mr. Rodriguez's petition for review for failure to meet the criteria for review set forth at 5 C.F.R. § 1201.115. This appeal followed.

## II.

■ Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703; *Kewley v. Dep't of Health & Human Servs.*, 153 F.3d 1357, 1361 (Fed.Cir.1998). The decision of the Board in this case is none of these.

■ The first specification that the AJ sustained as supporting the agency's negative suitability determination related to Mr. Rodriguez's failure to disclose his

two prior arrests on his 1987 SF–86. Mr. Rodriguez contends that in 1988 he was assured by an Office of Personnel Management ("OPM") investigator during a personnel interview that the interview was his "time to correct or explain his responses to the SF–86 without penalty," and that he disclosed one of his two arrests during that interview. Mr. Rodriguez also contends that his arrest records were sealed and therefore he was under no obligation to disclose the arrests. Mr. Rodriguez further points out that the instructions on the SF–86 form stated, "Giving us the information we ask for is voluntary."

We do not find Mr. Rodriguez's arguments convincing. First, the fact that the SF–86 form stated that giving the requested information was voluntary did not mean that Mr. Rodriguez would be entitled to an appointment if he failed to provide the requested information. Second, the 1987 SF–86 form specifically stated that, when listing arrests, the applicant could omit certain traffic violations and arrests before the age of 16 but that "[a]ll other incidents must be included, even though they were dismissed"—it did not include an exception for arrest records that had been sealed or expunged. And third, Mr. Rodriguez's failure to list his arrests on his SF–86 form is an independent basis to support a determination that he was unsuitable for Federal employment, regardless of whether he later disclosed one of the two arrests in a personnel interview.

The AJ also determined that Mr. Rodriguez had provided an incomplete response on his 1999 SF–86 by failing to list his former wife and son. Mr. Rodriguez contends that he forgot to list his son due to an "oversight," and that he forgot to list his former spouse because he had not been in contact with her for twenty years. Mr. Rodriguez also contends that he was under

a great deal of stress at the time. The AJ found Mr. Rodriguez's explanations "not plausible" because "it is difficult to forget a child especially one that has the same name as his father." We agree.

 Mr. Rodriguez also contends that the agency violated the Settlement Agreement by relying on his prior misconduct as a basis for finding him unsuitable for employment. He points out that the Settlement Agreement required him to resign "in lieu of having a removal action on his record." He also points out that the Settlement Agreement required the agency "to refer all employment inquiries concerning [Mr. Rodriguez] to the Labor Management Relations Branch of the Personnel Division." The Settlement Agreement states: "The official agency response to such inquiries will be that the [Mr. Rodriguez] resigned on February 9, 1993 for medical reasons." Mr. Rodriguez further points out that the Settlement Agreement required the agency "to cancel the Standard Form 50 documenting the removal . . . and to remove that Standard Form 50 from [his] official personnel file," and to "enter into [his] official personnel file a Standard Form 50 . . . reflecting [his] resignation, with the remarks section noted, 'Resigned for Medical Reasons.'"

The AJ concluded that the Settlement Agreement did not bar the agency from considering Mr. Rodriguez's prior misconduct when investigating his suitability for employment as a Border Patrol Agent. We agree. Although the Settlement Agreement required the agency to cancel and remove the Standard Form 50 documenting his removal, it did not contain any requirement that the agency purge all documents relating to his misconduct, and it did not prohibit the agency from considering that misconduct in connection with any allegation by Mr. Rodriguez for re-employment.

For the foregoing reasons, the final decision of the Board is affirmed.

No costs.