Bruce D. JORDAN, Petitioner,

v.

DEPARTMENT OF THE
ARMY, Respondent.

No. 03–3123.

United States Court of Appeals,
Federal Circuit.

DECIDED: July 24, 2003.

Before NEWMAN, LOURIE, and SCHALL, Circuit Judges.

PER CURIAM.

## DECISION

Bruce D. Jordan petitions for review of the final decision of the Merit Systems Protection Board ("MSPB" or "Board") that sustained the action of the Department of the Army ("Army") removing him from his position as a United States Army Reserve Unit Administrator, GS–07. *Jordan v. Dep't of the Army*, No. AT–0752–01–0336–I–1, 93 M.S.P.R. 303 (M.S.P.B. Dec.9, 2002). We *affirm*.

## DISCUSSION

### I.

Mr. Jordan was appointed to his Unit Administrator position on December 3, 1990. In that position, as a condition of employment, he was required to maintain membership in the United States Army Select Reserve. His position was thus considered a dual status position and referred to as a military technician ("MT") position. On October 3, 2000, Mr. Jordan lost his membership in the Selected Reserve because of nonparticipation in weekend drills and other training activities. Accordingly, on December 30, 2000, he was removed from his MT position for failure to maintain his reserve membership. Mr. Jordan timely appealed his removal to the Board.

In a case where an employee is removed from his civilian position for failure to maintain his reserve status, the Board's authority to review the removal is limited to determining (1) whether the position occupied contains a requirement that the incumbent possess such status; (2) whether the employee lost reserve status; (3) whether minimal due process was granted by the military; and (4) whether the loss of reserve status was within the employee's control. *See Thomas v. Dep't of the Army*, 34 M.S.P.R. 678, 680 (1987). Before the Board, Mr. Jordan did not dispute that his Unit Administrator position required membership in the Select Reserve and that he lost that membership for failure to participate in weekend drills and training activities. In challenging his removal, he argued that the Army denied him due process when it removed him from the Select Reserve. He also argued that his loss of reserve status was for reasons beyond his control because his failure to attend weekend drills and training activities was caused by a mental condition (obsessive compulsive disorder, dysthymic disorder, and generalized anxiety disorder). Finally, Mr. Jordan contended that, since he did not meet the requirements for receiving an unreduced annuity at the time of his removal, the Army was required to comply with the provisions of 10 U.S.C. § 10218(a)(3)(A), but failed to do so. That statute requires that an employee who loses his dual status on or after October 5, 1999, and who does not meet the requirements for an unreduced annuity, "shall be offered the opportunity to (i) reapply for, and if qualified, be appointed to, a position as a military technician (dual status), or (ii) apply for a civil service

position that is not a technician position." Mr. Jordan asserted that he was improperly denied the opportunity under (ii) to apply for a civilian position.

After Mr. Jordan waived his right to a hearing, the Administrative Judge ("AJ") decided the appeal on the documentary record. In an initial decision dated August 6, 2001, the AJ determined that Mr. Jordan had not been denied due process when he lost his reserve membership. *Jordan v. Dep't of the Army*, No. AT–0752–01–0336–I–1 (M.S.P.B. Aug.6, 2001). The AJ found that Mr. Jordan "was placed on notice over an extended period of time of what could happen to him if he continued to miss his reserve drills and training." *Id.* slip op. at 5. The AJ also found that, "[a]t any time during this period, [Mr. Jordan] could have presented whatever information he wanted for the military to consider." *Id.* In addition, the AJ pointed out that the Army gave Mr. Jordan a fitness for duty examination and found him physically fit for reserve duty. *Id.* The AJ noted Mr. Jordan's contentions that he had been summarily removed from the Select Reserve and that he had not been given an opportunity to respond to the removal action. Specifically, Mr. Jordan argued that, before he lost his Select Reserve status, his case should have been reviewed by the Commander, U.S. Army Reserve Personnel Command. Addressing that argument, the AJ determined that Mr. Jordan had not established that the procedures required under the regulation cited by Mr. Jordan, Chapter 9–13 of Army Regulation ("AR") 40–501, applied in his case.

The AJ also rejected Mr. Jordan's argument that his loss of reserve membership was for reasons beyond his control because his failure to participate in drills and training activities was caused by his mental condition. The AJ stated that AR 140–315 8d(2) appeared to support the Army's argument that, in the case of an MT such as Mr. Jordan, who was appointed to his position after December 8, 1983, loss of Select Reserve status for any reason results in removal from the MT position. *Id.* at 6. The AJ also stated that AR 140–315 8e(1), which defines what constitutes actions within an employee's control, refers to "[u]nsatisfactory military service or conduct." The AJ observed that, assuming the within the employee's control requirement applied, "[c]onceivably, the appellant's unsatisfactory participation can be deemed as unsatisfactory conduct." *Id.* at 7.

Finally, the AJ found that, under 10 U.S.C. § 10218(a)(3)(A), the Army was required to offer Mr. Jordan the opportunity to apply for a civil service position that was not an MT position, but that it had failed to do so. *Id.* at 8. The AJ concluded, however, that the failure was harmless. She did so based upon the declaration of Dawndra K. Lundgren, the Army's Personnel Management Specialist. In her declaration, Ms. Lundgren indicated that there were no vacancies in the commuting area for which Mr. Jordan was qualified during the time period between the date on which his removal was proposed and its effective date. *Id.* The AJ also noted that, the day after his removal was proposed, Mr. Jordan informed the Army that it was in violation of section 10218, indicating that he was aware of the statute during the applicable period. Nevertheless, the AJ pointed out, Mr. Jordan failed to present any evidence that he attempted to apply for a civil service position.

The AJ's initial decision became the final decision of the Board on December 9, 2002, when the Board denied Mr. Jordan's petition for review for failure to meet the criteria for review set forth at 5 C.F.R. § 1201.115. *Jordan v. Dep't of the Army*, No. AT–0752–01–0336–I–1 (M.S.P.B.

Feb.3, 2003). This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II.

Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c); *Kewley v. Dep't of Health & Human Servs.*, 153 F.3d 1357, 1361 (Fed. Cir.1998).

█ Mr. Jordan makes essentially the same arguments he did before the Board. Thus, he argues that the Army denied him due process when it removed him from the Select Reserve. As before, his contention is that, when the military received notice of his mental condition, it was required to submit the matter to the Commander, U.S. Army Reserve Personnel Command, in accordance with paragraph 9–13f of AR 40–501. In making this argument, Mr. Jordan points to the January 20, 2000 form bearing the statement of a medical officer that he was "unfit for duty due to mental condition." As in effect at the time, paragraph 9–13f stated that "Separation of Reservists who are accepted in the USAR then later found disqualified for active duty, ADT, or retention will be deferred pending review by the Commanding General, ARPERCEN." We see no error in the AJ's determination that this provision did not apply to Mr. Jordan. As noted above, the AJ pointed out that Mr. Jordan was given a fitness for duty examination and was found physically fit for reserve duty. Whatever his mental condition was, it thus did not disqualify him for retention in the reserves. Significantly, Mr. Jordan has not asserted that his mental condition was such that it rendered him unfit for retention under paragraph 3–32 or 3–33 of AR 40–501, both of which at the time referred to "symptoms sufficient to require extended or recurrent hospitalization," the "necessity for limitations of duty or duty in protected environment," or a condition "resulting in interference with effective military performance."

Mr. Jordan's argument that, in view of his mental condition, he was not removed from the Select Reserve for a reason within his control does not help him. Paragraph 8d(2) of AR 140–315 makes it clear that an MT who is appointed to his position after December 8, 1983, and who loses membership in his Select Reserve unit fails to meet a requirement for employment as an MT. The requirement that the loss of reserve membership be for a reason within his control applies to individuals appointed to MT positions before December 8, 1983. *See* AR 140–315 8.

█ Finally, we do not think that the AJ erred in holding that the Army's failure to comply with 10 U.S.C. § 10218(a)(3)(A) by affording Mr. Jordan an opportunity to apply for a civil service position amounted to harmless error. The AJ's holding is supported by the Lundgren declaration, as well as by the fact that, as the AJ noted, the record revealed that, during the applicable period, Mr. Jordan was aware of the statute and yet failed to apply for a civil service position.

For the foregoing reasons, the final decision of the Board is affirmed.

No costs.