NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3356

DARIEN WILSON,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.


Darien Wilson, of Pueblo, Colorado, pro se.

Courtney E. Sheehan, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent.  With him on the brief were Jeanne E. Davidson, Director, and Donald E. Kinner, Assistant Director.

Appealed from:  Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3356

DARIEN WILSON,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

Petition for review of the Merit Systems Protection Board in DE0752080120-I-1.

DECIDED: February 6, 2009

Before SCHALL, BRYSON, and LINN, Circuit Judges.

PER CURIAM.

DECISION

Darien Wilson petitions for review of the final decision of the Merit Systems Protection Board ("Board") that sustained the action of the Department of Homeland Security ("DHS" or "Agency"), removing him from his position for lack of candor and for filing inaccurate travel charges. Wilson v. Dep't of Homeland Sec., 109 M.S.P.R. 699 (2008) (Table) ("Final Decision"). We affirm.

DISCUSSION

I.

Prior to his removal, Mr. Wilson was employed by DHS as a Federal Air Marshall ("FAM"). His duties included conducting surveillance, searching airplanes for prohibited items, assisting local police at the Denver International Airport ("DIA"), and riding on domestic and international flights to provide security. Federal Air Marshalls work either mission status days, when they board flights and travel, or nonmission status days, when they patrol airports and work in the Agency's field office. On nonmission status days, a FAM is required to contact his or her duty supervisor upon arrival at either the Agency's office or the airport. The Agency's office and DIA are considered two different locations. On nonmission status days, FAMs are allowed to claim reimbursement for travel expenses to and from the airport. To claim reimbursement, however, a FAM must actually arrive at the airport.

On September 9, 2006, Mr. Wilson was scheduled for a nonmission status day. On that day, because he was suffering from back pain, he contacted his duty supervisor, Michael Dallarosa, to request sick leave. Mr. Dallarosa told Mr. Wilson to take sick leave.

On September 26, 2006, Mr. Wilson was interviewed by his acting supervisor, Jerold Freeman, and Mr. Dallarosa regarding his whereabouts on September 9, 2006. In addition to answering questions, Mr. Wilson provided a written statement describing that day's events. According to Mr. Wilson's statement, he was on an employee shuttle bus on his way to the airport when he spoke to Mr. Dallarosa on the phone about requesting sick leave. After Mr. Wilson had submitted this statement, however, he

alleged that Mr. Dallarosa had pressured him into writing specific things in the statement.

On or about September 30, 2006, Mr. Wilson submitted another statement by email regarding his whereabouts on September 9, 2006. In this statement, he stated that he arrived at the Agency's office around 8:00 a.m. and reiterated that he was at the airport when he spoke with Mr. Dallarosa over the phone about requesting sick leave. Mr. Wilson further stated that, when he had typed the September 26, 2006 statement, Mr. Dallarosa "was standing over [his] shoulder" and asked him to include certain items in the statement. Mr. Wilson did not indicate what specific items Mr. Dallarosa asked him to include.

Because of Mr. Wilson's allegations of coercion, the Agency asked another supervisory FAM, Robert Selby, to further investigate the events of September 9, 2006. On October 4, 2006, Mr. Selby conducted another interview with Mr. Wilson, in which Mr. Wilson admitted that his previous written statements were not entirely accurate. In particular, Mr. Wilson acknowledged that on September 9, 2006, he arrived at the Agency's office sometime after 8:15 a.m. and then went directly to a nearby restaurant. In contrast to what he previously indicated, Mr. Wilson admitted that he never was on the airport grounds or on the employee bus headed to the airport grounds. Mr. Wilson further stated that he spoke with Mr. Dallarosa over the phone about his back pain while at the restaurant, not while he was on the employee shuttle bus going to the airport. Thereafter, Mr. Wilson prepared a third written statement, confirming what he told Mr. Selby in the interview.

The Agency conducted another investigation, under the supervision of FAM Michael Ondocin, inquiring into whether Mr. Wilson had, on several occasions, improperly submitted travel reimbursement vouchers for nonmission status days. After obtaining relevant records—including field office entry records, time sheets, copies of travel vouchers, and records from the DIA parking facilities—Mr. Ondocin interviewed Mr. Wilson on May 9, 2007. During the interview, Mr. Ondocin questioned Mr. Wilson about several dates for which he had submitted travel reimbursement vouchers.

On September 20, 2007, the Agency proposed Mr. Wilson's removal on three charges. The first charge was "Lack of Candor" and related to his whereabouts and statements made in connection with September 9, 2006. The second charge was "Filing Inaccurate Travel Vouchers" and alleged that he improperly filed travel reimbursement vouchers. The final charge, "Lack of Candor—Time and Attendance," alleged that his time sheets were inaccurate. On November 14, 2007, the deciding official, Tony Hedges, upheld Mr. Wilson's removal based on all charges.

## II.

Mr. Wilson appealed his removal to the Board. On April 2, 2008, the administrative judge ("AJ") to whom the appeal was assigned issued an initial decision, sustaining Mr. Wilson's removal for the first charge, "Lack of Candor," and the second charge, "Filing Inaccurate Travel Vouchers." Wilson v. Dep't of Homeland Sec., DE-0752-08-0120-I-1 (M.S.P.B. Apr. 2, 2008) ("Initial Decision"). Regarding the first charge, the AJ explained that there was a preponderance of evidence showing that Mr. Wilson's statements about the events of September 9, 2006, lacked candor. For example, Mr. Wilson initially stated that he was at the airport but later admitted that he

was never at the airport. Instead, he had gone to a nearby restaurant. The AJ further highlighted that Mr. Wilson initially indicated that he had arrived at the Agency's office at 8:00 a.m., but subsequently stated that he didn't arrive until after 8:15 a.m. The AJ similarly found a preponderance of evidence supporting the second charge. In particular, Mr. Wilson had submitted a travel reimbursement voucher for the day of September 9, 2006—when he had admittedly never gone to the airport. The AJ, however, did not sustain the third charge, "Lack of Candor—Time and Attendance." The AJ also determined that, notwithstanding the fact that he did not sustain the third charge, the Agency's penalty of removal was reasonable for Mr. Wilson's lack of candor and filing inaccurate travel vouchers.

The Initial Decision became the final decision on August 1, 2008, when the Board denied Mr. Wilson's petition for review. Final Decision. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

### III.

Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c); Kewley v. Dep't of Health & Human Servs., 153 F.3d 1357, 1361 (Fed. Cir. 1998).

### IV.

Mr. Wilson argues that the Board did not consider several facts, which he submits show that the first charge, "Lack of Candor," and the second charge, "Filing

Inaccurate Travel Vouchers," were erroneously upheld. Mr. Wilson contends that the Board failed to consider that, although he was not at DIA on September 9, 2006, he had been present at the Agency's office that day. Mr. Wilson also argues that the Board ignored that he was allegedly coerced into including certain inaccurate material into his first written statement—namely, being on the employee bus headed towards the airport when he called Mr. Dallarosa. Thus, according to Mr. Wilson, including this inaccuracy caused the contradiction with his later statements. Regarding the second charge, Mr. Wilson contends that the Board did not take into account that he later paid for the improperly submitted travel voucher.

Because the Board's findings are supported by substantial evidence and it did not err as a matter of law, we affirm its decision sustaining the first charge, "Lack of Candor," and the second charge, "Filing Inaccurate Travel Vouchers." The Board carefully considered substantial evidence showing that Mr. Wilson lacked candor in his statements regarding the events of September 9, 2006. For example, as the Board explained, Mr. Wilson's initial statement—detailing that he "was at the airport" and arrived at the Agency's office at 8:00 a.m.—clearly contradicted his later statements. Importantly, not only did he admit that he did not arrive at the Agency's office until some time after 8:15 a.m., Mr. Wilson also conceded that he never "was at the airport," but was at a local restaurant instead.

Moreover, contrary to Mr. Wilson's suggestion, the Board explicitly addressed the alleged coercion. As explained by the Board, even ignoring the allegedly coerced statement that he was on the employee bus, there was still substantial evidence that his statements were contradictory—namely, that he initially stated he "was at the airport"

but later admitted that he was not. In addition, Mr. Wilson's contention that the Board failed to consider that he was at the Agency's office on September 9, 2006 is irrelevant. As conceded by Mr. Wilson, "[t]he allegation was that [he] was never present at the airport, which is true," not whether he was at the Agency's office.

Similarly, there was substantial evidence supporting the second charge, "Filing Inaccurate Travel Vouchers." For example, the evidence clearly showed that Mr. Wilson submitted a reimbursement voucher for September 9, 2006, despite the fact that he never arrived at the airport that day—a requirement in order to claim reimbursement. Mr. Wilson's contention that he later repaid the reimbursement amount is of no consequence, as it does not change the fact that he initially filed an erroneous report.

In sum, the Board properly analyzed the record evidence and correctly sustained the first and second charges against Mr. Wilson. It is not for this court to reweigh the evidence on appeal. See, e.g., Henry v. Dep't of Navy, 902 F.2d 949, 951 (Fed. Cir. 1990).

V.

We consider next Mr. Wilson's contention that the Board improperly sustained the penalty of removal. He argues that, in finding that the penalty was reasonable, the Board failed to consider his high performance appraisals.

We will only overturn an Agency's penalty determination if it is "so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." O'Neill v. Dep't of Hous. & Urban Dev., 220 F.3d 1354, 1365 (Fed. Cir. 2000) (quoting Villela v. Dep't of Air Force, 727 F.2d 1574, 1576 (Fed. Cir. 1984)). Despite Mr. Wilson's arguments, we see no error in the Board's decision that the

penalty was not unreasonable. The Board explained that, in removing Mr. Wilson, the deciding official considered the requisite Douglas factors—including Mr. Wilson's high performance appraisals. Notwithstanding his high performance appraisals, however, the deciding official found that other factors—for example, the seriousness of Mr. Wilson's misconduct, his status as a law enforcement officer, and the effect of his conduct on his supervisor's confidence in his performance abilities—supported removal as the appropriate penalty. Under these circumstances, we cannot properly disturb the decision to impose the penalty of removal.

In conclusion, there is substantial evidence to support the Board's decisions sustaining both the first charge, "Lack of Candor," and the second charge, "Filing Inaccurate Travel Vouchers." We also find no error in the Board's decision that the penalty of removal was not unreasonable.

For the foregoing reasons, the final decision of the Board is affirmed.

No costs.