NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ADONIS BERLE WHITBY,**
*Petitioner,*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent.*

---

2011-3009

---

Petition for review of the Merit Systems Protection Board in Case No. AT0842100562-I-1.

---

Decided: April 11, 2011

---

ADONIS BERLE WHITBY, of Macon, Georgia, pro se.

K. ELIZABETH WITWER, Trial Attorney, Commercial Litigation Branch, Civil Division, of Washington, DC, for respondent. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and REGINALD T. BLADES, JR., Assistant Director.

---

Before LOURIE, PLAGER, and LINN, *Circuit Judges*.

PER CURIAM.

Adonis Berle Whitby petitions for review of the final decision of the Merit Systems Protection Board ("the Board") upholding the denial by the Office of Personnel Management ("OPM") of Whitby's application for federal retirement benefits. *Whitby v. Office of Pers. Mgmt.*, No. AT-0842-10-0562-I-1 (M.S.P.B. July 16, 2010) ("*Initial Decision*"), (M.S.P.B. Sept. 28, 2010) ("*Final Order*"). We *affirm*.

## BACKGROUND

Whitby served in the military from June 4, 1967, to January 26, 1970, and again from October 5, 1976, to October 4, 1980. Whitby paid the requisite deposit for an annuity for his military service into the Federal Employees Retirement System ("FERS"). Whitby also served as a federal civilian employee under FERS from March 19, 1984, through April 9, 1993, and again from September 8, 2002, through December 20, 2007.

In April 1993, after nine years of civilian service, Whitby submitted an application for a refund of his military deposit and all of his FERS annuity contributions up to that date. Whitby admits that he filled out, signed, and submitted the refund form to OPM. Also, because he was married, his wife and two witnesses signed an additional form consenting to the disbursement of the refund. The refund request form, entitled "Application for Refund of Retirement Deductions," states in bold above Whitby's signature block, "I understand that payment of a refund will result in permanent forfeiture of any retirement rights that are based on the period(s) of service which the

refund covers, as explained on the reverse side of this form." A15.

Whitby, however, incorrectly identified his address on the refund form. He indicated that he wanted the refund check mailed to "40C *Twin Lakes*, Clifton Park, NY 12065." But, while "Twin Lakes" is the general name for the region he lived in at the time, his correct street address was "Friar's Gate." All other address information, including Whitby's name, street number, city, state, and zip code, were correct.

In January 2008, following Whitby's second separation from federal civilian service, Whitby submitted an Application for Deferred or Postponed Retirement to OPM. On the application, Whitby correctly identified the dates of his prior military and civilian service, but he failed to acknowledge that he had previously filed for a refund of his military deposit and all of his pre-April 1993 FERS annuity contributions. OPM denied Whitby's application for retirement benefits under FERS on the basis that Whitby lacked ten years of creditable service because of his 1993 refund.

Whitby appealed OPM's denial of his retirement benefit application to the Board. Whitby argued that he never received the 1993 refund check because of the incorrect street address on the refund form, and forgot to inquire about the lost check until OPM denied his 2008 retirement benefit application. Whitby also argued that he did not understand the nature of the 1993 refund form.

On July 16, 2010, the administrative judge ("AJ") issued an initial decision affirming OPM's denial of Whitby's retirement benefit application. *Initial Decision*, at 2. The AJ found Whitby's testimony that he did not

understand the refund form and that he did not receive the refund check to be "not credible." *Id.* at 5-6. Specifically, the AJ found "it inherently implausible . . . that an individual of [Whitby]'s intelligence failed to understand the simple refund request form," as Whitby "demonstrated a very good memory and a high level of sophistication in dealing with . . . complex issues." *Id.* at 5. The AJ also found it implausible that Whitby forgot to notify OPM of the allegedly missing check until January 2008, as Whitby remembered and provided detailed descriptions of other checks he had received from the government following his 1993 separation from federal service, including a separation incentive check of roughly $9,000 and a refund check for his Thrift Savings Plan contributions of around $40,000. *Id.* at 5-6.

The AJ also found that OPM had provided uncontested evidence that Whitby's refund application had been received and processed by OPM, that OPM had directed the Treasury to issue the refund check to the address provided, and that no record existed of the check being returned as undeliverable. *Id.* at 6. The AJ excused OPM from producing definitive proof that Whitby had deposited the check because Whitby's fifteen-year delay in reporting the check missing caused that proof to be lost. *Id.* at 6-7 (citing *Rint v. Office of Pers. Mgmt.*, 48 M.S.P.R. 69, 71-72, *aff'd*, 950 F.2d 731 (Fed. Cir. 1991)). The AJ also relied on the fact that the U.S. Postal Service ("USPS") had Whitby's correct name and address and that, as Whitby acknowledged, § 507.1.5.1 of its Domestic Mail Manual required the Postal Service to undertake procedures to either deliver the check or return it to the Treasury. *Id.* at 7. Based on the record as a whole, the AJ concluded that it was more likely than not that Whitby received the refund check despite the inaccurate street address. *Id.*

Whitby filed a petition for review by the full Board. The Board denied Whitby's petition on September 28, 2010, making the AJ's initial decision the final decision of the Board. Whitby timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) and 5 U.S.C. § 7703(b)(1).

DISCUSSION

Our review of a decision by the Board is limited by statute. We must affirm the Board's decision unless we find it to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *Kewley v. Dep't of Health & Human Servs.*, 153 F.3d 1357, 1361 (Fed. Cir. 1998). An applicant for federal retirement benefits bears the burden of showing that he is entitled to the benefit sought by a preponderance of the evidence. *Cheeseman v. Office of Pers. Mgmt.*, 791 F.2d 138, 140-41 (Fed. Cir. 1986).

Whitby argues that the incorrect street address on his 1993 refund form resulted in the non-delivery of his refund check, and that the AJ improperly shifted the burden onto him to prove non-receipt despite the use of the wrong address. He points to the absence of any reference to the refund on his tax returns as proof that he never received the refund check. Whitby also presses two alternative arguments: First, he argues that he did not think that the refund form he signed was for his retirement annuity. He also argues that the refund should be null and void because the refund form required the disclosure of current as well as former spouses, and he failed to disclose the existence of two former spouses.

We first address Whitby's theory that his failure to disclose the existence of two former spouses on his 1993 refund form rendered the refund null and void. Not only is Whitby precluded from raising this argument on appeal because he did not raise it before the Board, *see Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322-23 (Fed. Cir. 2008), but also it rests on a contract theory of relief inapplicable to federal retirement benefits, which are governed by statute, not contract, *see Zucker v. United States*, 758 F.2d 637, 640 (Fed. Cir. 1985). Furthermore, even accepting Whitby's theory of relief, he would then be required to return the received refund to the government. Yet, not only is Whitby unprepared to redeposit his 1993 refund, claiming as he does that he never received it, but also he is unable to do so, since he is not currently employed in a federal position subject to FERS. *See Rint*, 48 M.S.P.R. at 72.

We also reject Whitby's alternative argument: that he did not understand that the refund form he signed in 1993 was for a retirement annuity. The AJ found Whitby's testimony to this effect "inherently implausible," noting that Whitby "demonstrated a very good memory and a high level of sophistication in dealing with . . . complex issues." *Initial Decision*, at 5. Such credibility determinations are virtually unreviewable on appeal. *Kahn v. Dept. of Justice*, 618 F.3d 1306, 1313 (Fed. Cir. 2010). Moreover, the refund form itself states in all capital letters on the top that it is an "Application for Refund of Retirement Deductions" from the "Federal Employees Retirement System," and the form states in bold above the signature block that "payment of a refund will result in permanent forfeiture of any retirement rights" for the listed periods of service. A15. Whitby also testified in great detail about the nature of other checks he received from the government after he left federal

service in 1993, including a check for a refund of his Thrift Savings Plan contributions. *Initial Decision*, at 5. Accordingly, nothing in the record undermines the AJ's determination.

Finally, we address Whitby's main argument: that the AJ improperly shifted the burden onto him to prove non-receipt of the refund when the incorrect street address resulted in the non-delivery. In such a situation, Whitby claims, *Cheeseman*, 791 F.2d at 140-41, and *Rint*, 48 M.S.P.R. at 71-72, do not apply. We disagree.

In *Cheeseman*, we upheld the Board's decision to place the burden of proving entitlement to retirement benefits on the applicant. 791 F.2d at 141. Applying that burden in *Rint*, the Board held, and we affirmed, that OPM need not provide definitive proof that a refund check issued by the Treasury was deposited when the applicant's significant delay in reporting the check missing resulted in the loss of such proof. 48 M.S.P.R. at 71-72. Whitby seeks retirement benefits, and thus he bears the burden set out in *Cheeseman*. And, as in *Rint*, he waited fifteen years before reporting his 1993 refund check missing, resulting in the loss of Treasury records that could have shown that the check was deposited. Accordingly, contrary to Whitby's assertion, *Rint* applies here and relieves OPM from producing proof that Whitby actually deposited the 1993 refund check. The only question, therefore, is whether the undisputed evidence that the Treasury sent Whitby's refund check to the wrong street address shifted the burden of proof.

Whitby cites several cases in support of his argument, including *Fluker v. Brown*, 5 Vet. App. 296 (1993), and *Piano v. Brown*, 5 Vet. App. 25 (1993). In both *Fluker* and *Piano*, the United States Court of Veterans Appeals held

that the failure of the Department of Veterans Affairs ("VA") to mail a decision of the Board of Veterans' Appeals to the veteran's correct address constituted clear evidence sufficient to rebut the presumption of regularity, shifting the burden to the VA to show that the decision was mailed to the last known address of record in accordance with statute. *Fluker*, 5 Vet. App. at 298; *Piano*, 5 Vet. App. at 27. Unlike *Fluker* and *Piano*, however, it was Whitby who caused the address error, and thus the incorrect address in no way reflects on the regularity of OPM's procedures. Moreover, if an incorrectly mailed item is actually received, as the AJ found here, the presumption of regularity becomes moot. *Baxter v. Principi*, 17 Vet. App. 407, 410 (2004).

Yet, even if the use of an incorrect address did shift the burden to OPM in this case, the record shows that OPM met that burden. The AJ found that the Treasury issued Whitby's refund check, but to the incorrect address, and that no record existed of the refund check being returned as undeliverable to either the Treasury or OPM. *Initial Decision*, at 6-7. The AJ also found that USPS had Whitby's correct name and address, and that USPS's Domestic Mail Manual required the Postal Service to undertake procedures to either deliver the check to Whitby or return it to the sender. *Id.* at 7. Furthermore, the AJ made a credibility determination against Whitby, finding not credible his testimony that he did not receive the refund check and then forgot about it until OPM denied his retirement application fifteen years later. *Id.* at 5-6. Finally, Whitby's evidence that the 1993 refund does not appear on his tax forms not only appears to have not been presented to the Board, but also appears incomplete, and thus unreliable, as the tax forms also do not reflect monies from the government that Whitby admits having received in 1993.

Accordingly, for the reasons stated herein, we affirm the Board's final decision upholding the denial by OPM of Whitby's application for a retirement annuity under FERS.

**AFFIRMED**

COSTS

No costs.