**Thomas A. SANDIFER, Petitioner,**

v.

**DEPARTMENT OF THE NAVY, Respondent.**

No. 02–3021.

United States Court of Appeals,
Federal Circuit.

May 8, 2002.

Before MICHEL, CLEVENGER, and SCHALL, Circuit Judges.

### DECISION

PER CURIAM.

Thomas A. Sandifer petitions for review of the final decision of the Merit Systems Protection Board ("Board"), *Sandifer v. Dep't of the Navy,* 90 M.S.P.R. 91 (2001), that sustained the Department ·of the Navy's ("agency's") denial of his request for Law Enforcement Officer ("LEO") retirement credit under the Civil Service Retirement System ("CSRS"). Mr. Sandifer sought LEO coverage for his former Supervisory Police Officer position with the agency. We *affirm.*

### DISCUSSION

#### I.

Mr. Sandifer was first employed with the agency as a GS–0085–04 Guard at the Norfolk Naval Shipyard in 1980. The agency reassigned him to the position of GS–0083–04 Police Officer on October 2, 1983. Thereafter, on April 29, 1984, he was promoted to the grade of GS–05. On March 2, 1986, the agency assigned Mr. Sandifer to the position of Supervisory Police Officer, GS–0083–06, and it subsequently promoted him to the grade of GS–07. In June of 1998, Mr. Sandifer filed a formal request for LEO retirement coverage by reason of having served in a "secondary" LEO position.

In order to establish LEO coverage in a secondary position, the following criteria

must be met: (i) the employee is transferred directly (*i.e.,* without a break in service exceeding 3 days) from a primary position to a secondary position; and (ii) if applicable, the employee has been continuously employed in secondary positions since transferring from a primary position without a break in service exceeding three days. 5 C.F.R. § 831.904(a). To establish an entitlement to secondary LEO coverage in his supervisory position, Mr. Sandifer was required to prove that the GS–05 position he occupied when the agency promoted him in March of 1986 was a primary LEO position.

After the agency denied his request for LEO retirement coverage, Mr. Sandifer appealed to the Board. In an initial decision, the administrative judge ("AJ") to whom the appeal was assigned reversed the agency's decision denying LEO retirement coverage. *Sandifer v. Dep't of the Navy,* No. DC–0831–99–0515–1–3 (May 25, 2000)("*Initial Decision*"). The AJ concluded that Mr. Sandifer's position as a GS–05 Police Officer qualified as a primary LEO position. Having determined that Mr. Sandifer's GS–05 position qualified for primary LEO coverage, the AJ ruled that Mr. Sandifer was entitled to secondary LEO coverage in his Supervisory Police Officer position. *Initial Decision* at 36.

The agency filed a petition for review of the Initial Decision, and the Office of Personnel Management ("OPM") intervened. Among other things, OPM and the agency argued that Mr. Sandifer was not entitled to secondary LEO service credit in the Supervisory Police Officer position because the primary duties of the GS–0083–05 Police Officer position that Mr. Sandifer held in 1986 prior to his promotion to the supervisory position were not the investigation, arrest, apprehension or detention of individuals suspected or convicted of offenses against the criminal laws of the United States.

The Board granted the petition for review and reversed the Initial Decision. The Board concluded that Mr. Sandifer had failed to carry his burden of proving that the GS–05 position from which the agency promoted him was a primary LEO position. *Sandifer v. Dep't of the Navy,* 90 M.S.P.R. 91 (2001). The Board decision was based, in part, upon the following analysis of Mr. Sandifer's testimony at the hearing:

In response to the question, "When you were in the GS–05 position, what were your major responsibilities, your primary duties?," the appellant answered, "To protect and serve, to protect life and property, enforce federal and state laws, respond to intrusion alarms, issue summons ... radar control, traffic control." HT 5, Side A. The appellant also testified, "We wasn't building checkers, but we did look at buildings as we saw fit." *Id.* Later in the hearing, the appellant's representative asked, "Can you tell me what your primary responsibilities were when you were a GS–05?," and the appellant answered, "Protect government property, really. And government personnel and any other personnel on government property and the surrounding area." *Id.* The representative then asked, "Did you have any responsibilities with regards to crime?," and the appellant stated, "Yes sir. Any type of crime, or any type of infraction, my responsibility was I saw it or I was sent to it." *Id.* In response to the question, "And what was your responsibility when you arrived?," the appellant testified, "To protect the scene, investigate, get all information that I could from individuals that was on the scene. If I got a suspect after some questioning and some note-taking, then

I would *Miranda* warning, apprehend, and detain." *Id.*

*Slip op.* at 5.

Despite the AJ's finding to the contrary, the Board concluded that Mr. Sandifer's testimony was not sufficient to establish that the primary duties of his GS–05 police officer position were the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States. *Id.* at 6.[1] The Board also concluded that the general patrol duties described in Mr. Sandifer's testimony, such as protecting life and property, responding to intrusion alarms, and controlling traffic, did not constitute LEO duties for the purpose of establishing entitlement to LEO coverage. *Id.* To the extent that Mr. Sandifer had given anecdotal testimony about duties that involved the investigation, apprehension, and detention of convicted or suspected criminals, the Board found that he had not shown that these were the primary duties of his former GS–05 position. *Id.* at 7.

## II.

Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c); *Kewley v. Department of Health & Human Services,* 153 F.3d 1357, 1361 (Fed.Cir.1998). The decision of the Board in this case is none of these.

Federal police officers are only eligible for early retirement credit under the CSRS if they meet the statutory definition of an LEO; *i.e.* one who holds a position, the "primary duties" of which involve the "investigation, apprehension, or detention" of those suspected or convicted of federal offenses. 5 U.S.C. §§ 8331(20); *Watson v. Dep't of the Navy,* 262 F.3d 1292, 1297–98 (Fed.Cir.2001). By regulation, OPM has defined "primary duties" in a three-part test. "Primary duties" are those duties that:

i. Are paramount in influence or weight; that is constitute the basic reasons for the existence of the position;

ii. Occupy a substantial portion of the individual's working time over a typical work cycle; and

iii. Are assigned on a regular and recurring basis.

5 C.F.R. §§ 831.902. In general, if an employee spends at least fifty percent of his or her time performing certain duties, those duties are his or her primary duties. *Id.* Under the regulations, "[d]uties that are of an emergency, incidental, or temporary nature cannot be considered 'primary' even if they meet the substantial portion of time criterion." *Id.* Further, the regulations state that the definition of a LEO "does not include an employee whose primary duties involve maintaining law and order, protecting life and property, guarding against or inspecting for violations of law, or investigating persons other than those who are suspected or convicted of offenses against the criminal laws of the United States." *Id.* A police officer seeking LEO retirement coverage bears the burden of proving entitlement by preponderant evidence. 5 C.F.R. § 1201.56(a)(2).

In *Watson,* we stated that, "[i]n order to determine that an officer is entitled to

---

1. The AJ had determined that the position description for the GS–05 Police Officer position did not describe a primary LEO position.

LEO retirement credit, the officer must show that the *primary* duties of his or her position ... are the investigation, apprehension, and detention of criminals or suspects." 262 F.3d at 1303. "The most probative factors ... are: 1) whether the officers are merely guarding life and property or whether the officers are instead more frequently pursuing or detaining criminals; 2) whether there is an early mandatory retirement age; 3) whether there is a youthful maximum entry age; 4) whether the job is physically demanding so as to require a youthful workforce; and 5) whether the officer is exposed to hazard or danger." *Id.* We also stated in *Watson* that the six factors set forth in *Bingaman v. Dep't of the Treasury*, 127 F.3d 1431, 1436 (Fed.Cir.1997), may be considered as "necessary and appropriate."[2] *Id.*

We agree with the Board that the testimony presented by Mr. Sandifer and the other shipyard police officers at the hearing was insufficient to establish that Mr. Sandifer's former GS–05 position was a primary LEO position. Notably, Mr. Sandifer did not satisfy at least the first three *Watson* factors. As noted by the Board, the general patrol duties described in Mr. Sandifer's testimony, such as protecting life and property, responding to intrusion alarms, and controlling traffic did not constitute LEO duties for the purpose of establishing entitlement to LEO coverage. Furthermore, there was not an early mandatory retirement age nor a youthful maximum entry age. Although the shipyard police officers testified at the hearing that a GS–05 Police Officer's primary duties involved LEO-type work, the Shipyard Commander testified that only 30 to 40 percent, on the average, of the work of a

shipyard police officer was the investigation, arrest, apprehension or detention of criminals and/or suspected criminals. Substantial evidence thus supports the Board's conclusion that the Mr. Sandifer's primary duties were not LEO duties.

In summary, we agree with the Board that Mr. Sandifer offered insufficient evidence to establish that the primary duties of his GS–05 position were the investigation, apprehension, or detention of individuals suspected or convicted of criminal offenses.

Accordingly, the final decision of the Board is affirmed.

Each party shall bear its own costs.

---

**2.** Under the six *Bingaman* factors, an LEO "commonly 1) has frequent direct contact with criminal suspects; 2) is authorized to carry a firearm; 3) interrogates witnesses and suspects, giving Miranda warnings when appropriate; 4) works for long periods without a break; 5) is on call 24 hours a day; and 6) is required to maintain a level of physical fitness." *Watson*, 262 F.3d at 1299 (citing *Bingaman v. Dep't of the Treasury*, 127 F.3d 1431, 1436 (Fed.Cir.1997)).