final for purposes of our review and is therefore dismissed.

Each side shall bear its own costs.

David LEWIS, Petitioner,

v.

**DEPARTMENT OF JUSTICE,**
**Respondent.**

No. 02–3098.

United States Court of Appeals, Federal Circuit.

May 13, 2002.

Before SCHALL, BRYSON, and LINN, Circuit Judges.

## DECISION

PER CURIAM.

David Lewis petitions for review of the final decision of the Merit Systems Protection Board ("Board"), No. DC–0752–01–0168–I–1, that affirmed the action of the Department of Justice's ("Department's") Immigration and Naturalization Service ("INS") demoting Mr. Lewis for engaging in conduct unbecoming an INS employee and for violating INS regulations. Because we conclude that the Board's decision is supported by substantial evidence and is free of legal error, we *affirm*.

## DISCUSSION

### I.

In his capacity as an INS asylum officer, on May 28, 1992, Mr. Lewis adjudicated and granted the asylum application of Dikembe Mutombo, a famous professional basketball player who then played for the Denver Nuggets. Approximately two years after granting the asylum application, Mr. Lewis contacted Mr. Mutombo's attorney and requested tickets to a Denver Nuggets game in Denver. The attorney agreed to provide tickets to the February 1, 1994 game, and he told Mr. Lewis that he could pick up the tickets at the will-call window before the game. When Mr. Lewis arrived to receive the tickets, however, he learned that they had not been set aside as promised, whereupon he presented his INS credentials and badge, requested to speak with a team manager, and identified himself as a friend of Mr. Mutombo. An employee of the Denver Nuggets then escorted Mr. Lewis to seats in the section of the arena where the players' wives watch the games.

Based on the foregoing episode, Mr. Lewis was charged with conduct unbecoming an INS employee. That charge was accompanied by two specifications. The first specification alleged that after processing Mr. Mutombo's asylum request, Mr. Lewis improperly requested basketball tickets from Mr. Mutombo's attorney. It was charged that Mr. Lewis' conduct violated 5 C.F.R. § 2635.202(a) (2000), which prohibits the solicitation or acceptance of gifts "from a prohibited source." The second specification in support of the charge concerned Mr. Lewis' display of his INS credentials, his request to see a team manager, and his identification of himself as Mr. Mutombo's friend when he learned that the requested tickets had not been set aside at the will-call window.

More than six years after the incident involving the basketball tickets, on May 20, 2000, Mr. Lewis posted a message to a public forum at an internet site maintained by the Public Broadcasting Service, in which he identified two asylum applicants, including Mr. Mutombo. In addition, the message stated, "I granted Dikembe Mutombo asylum," and identified Mr. Lewis as its author by name and position. The Department charged that by posting the message, Mr. Lewis violated 8 C.F.R. § 208.6 (2000), which provides in part that "[i]nformation contained in or pertaining to any asylum application ... shall not be disclosed without the written consent of the applicant."

On the basis of both charges, on November 13, 2000, the INS demoted Mr. Lewis from his position of Supervisory Asylum Officer to that of Asylum Officer, thereby reducing his pay by one grade. Mr. Lewis appealed the demotion to the Board. On April 2, 2001, the administrative judge ("AJ") to whom the case was assigned affirmed the demotion, finding both charges factually and legally supported and the penalty reasonable under the factors announced in *Douglas v. Veterans Administration*, 5 MSPB 313, 5 M.S.P.R. 280, 305–06 (1981). The AJ's initial decision

became the final decision of the Board on November 5, 2001, when the Board denied Mr. Lewis' petition for reconsideration review.

## II.

We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703 (2000); *Kewley v. Dep't of Health & Human Servs.*, 153 F.3d 1357, 1361 (Fed.Cir.1998). The burden of establishing that the Board committed reversible error rests upon the petitioner, in this case, Mr. Lewis. *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed.Cir. 1998).

■ On appeal, in addressing the charge of conduct unbecoming an INS employee, Mr. Lewis contends that there is no evidence that Mr. Mutombo's attorney actually provided him with tickets, since the tickets were not set aside at the will-call window. Moreover, Mr. Lewis argues, "there is no evidence ... to suggest that my displaying of [the INS identification] card gained me any special treatment." Neither of these arguments persuades us that the Board's decision was unsupported by substantial evidence. Initially, the regulation that Mr. Lewis is alleged to have violated, 5 C.F.R. § 2635.202(a), prohibits employees from soliciting *or* accepting gifts. In view of Mr. Lewis' admission, and the Board's finding, that Mr. Lewis indeed contacted Mr. Mutombo's attorney to obtain valuable basketball tickets, we find no error in the Board's conclusion that Mr. Lewis solicited a gift. Accordingly, the Board properly found that Mr. Lewis violated the plain language of the regulation and conducted himself in a manner

unbecoming an INS employee. As far as the second specification supporting the charge is concerned, the Board properly relied on the INS Officer's Handbook, which specifically proscribes "use of official certificates or official titles for other than official purposes." It is Mr. Lewis' underlying conduct that substantiated the charge, not his ultimate success in procuring seats in an attractive section of the arena.

■ As for the second charge (improperly disclosing information pertaining to an applicant for asylum), Mr. Lewis does not dispute the Board's findings that he posted a message revealing Mr. Mutombo's name and information regarding his asylum status without written consent. Instead, Mr. Lewis argues that Mr. Mutombo did not hide the fact that he had been granted asylum, and the disclosure therefore was harmless. The problem with this argument is that the regulation proscribing such disclosure makes no exception permitting "harmless" disclosure of information relating to asylum applications or disclosure relating to applicants who did not hide the fact that they had been granted asylum. It unequivocally prohibits the disclosure of "[i]nformation contained in or pertaining to any asylum application" without the written consent of the applicant. 8 C.F.R. § 208.6. The regulation is clear, and the Board applied it correctly.

For the foregoing reasons, the final decision of the Board is affirmed.

Each party shall bear its own costs.