NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-3230

WILFRED B. HARRIS,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Gerald C. Baker, Baker & Gaffigan, LLC,  of Lanham, Maryland, argued for petitioner.

Brain T. Edmunds, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent.  With him on the brief were Jeffrey S. Bucholtz, Acting Assistant Attorney General; Jeanne E. Davidson, Director; and Steven J. Gillingham, Assistant Director.

Appealed from:  Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-3230

WILFRED B. HARRIS,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Petition for review of the Merit Systems Protection Board in PH831M060419-I-2.

_____

DECIDED: April 8, 2008

_____

Before MAYER and SCHALL, <u>Circuit Judges</u>, and YOUNG, <u>District Judge</u>.[*]

SCHALL, <u>Circuit Judge</u>.

## DECISION

Wilfred B. Harris petitions for review of the final decision of the Merit Systems Protection Board ("Board") that affirmed the reconsideration decision of the Office of Personnel Management ("OPM") that Mr. Harris had been overpaid $83,270.15 as a result of OPM's erroneous award to him of Discontinued Service Retirement ("DSR")

---

[*] Honorable William G. Young, District Judge, United States District Court for the District of Massachusetts, sitting by designation.

benefits under 5 U.S.C. § 8336(d)(1). Harris v. Office of Pers. Mgmt., No. PH831M060419-I-2 (M.S.P.B. Feb. 9, 2007) ("Board Decision").[1] We affirm.

DISCUSSION

I.

At the time of his removal from service, Mr. Harris was employed by the Department of the Army as a motor vehicle operator. Pursuant to new security requirements, employees in Mr. Harris's position had been ordered to obtain a Top Secret Security Clearance and Gold Security Badge by December 31, 2000. Mr. Harris was notified that the enhanced clearance and security badge were required for his continued employment, but he refused to sign a "condition of employment" statement acknowledging the new requirements. Mr. Harris was ultimately removed from service on May 25, 2001, after he failed to complete and return the paperwork necessary to obtain the Top Secret Security Clearance and Gold Security Badge.

On July 17, 2004, Mr. Harris submitted an application for benefits under the DSR provision of the Civil Service Retirement Act, 5 U.S.C. § 8336(d)(1). Section 8336(d)(1) provides:

(d) An employee who—

(1) is separated from the service involuntarily, except by removal for cause on charges of misconduct or delinquency . . . after completing 25 years of service or after becoming 50 years of age and completing 20 years of service is entitled to an annuity . . . .

---

[1] The Board administrative judge to whom Mr. Harris's appeal was assigned issued an initial decision in the case on February 9, 2007. That initial decision became the final decision of the Board when Mr. Harris failed to petition for Board review by March 16, 2007.

(emphasis added). OPM initially determined that Mr. Harris was entitled to receive DSR benefits under section 8336(d)(1), and began disbursement of his annuity. Subsequently, however, OPM discovered the circumstances surrounding Mr. Harris's removal from service. OPM concluded that Mr. Harris's removal from service, due to his inaction with respect to meeting the enhanced security requirements, constituted a "removal for cause on charges of misconduct or delinquency." Accordingly, OPM terminated Mr. Harris's DSR benefits effective August 1, 2005. OPM explained its decision in a letter to Mr. Harris dated August 11, 2005.

In a letter dated August 26, 2005, OPM further informed Mr. Harris that he was obligated to repay the DSR benefits that had already been distributed to him—an amount totaling $83,270.15.[2] Mr. Harris sought reconsideration of OPM's initial decision, arguing that his failure to submit the Top Secret Security Clearance and Gold Security Badge paperwork was not "misconduct" because he was exempted from the enhanced security requirements by an agreement negotiated between the Army and his union, the American Federation of Government Employees Local 1622. On November 28, 2005, OPM affirmed its initial decisions terminating Mr. Harris's DSR benefits and seeking to collect the DSR benefits already disbursed. Thereafter, on April 20, 2006, OPM decided to suspend further collection action in light of Mr. Harris's financial circumstances.

---

[2] OPM determined that Mr. Harris had erroneously received a total of $85,070.20 in DSR benefits for the period of May 17, 2001 through August 1, 2005. From that amount, OPM subtracted the $1,800.05 that it could recover separately. Thus, the net amount that OPM sought to recover from Mr. Harris was $83,270.15.

Mr. Harris appealed to the Board within the prescribed time period. In connection with the appeal, OPM forwarded a copy of Mr. Harris's file to the Board on May 31, 2006. Accompanying the file was a letter, in which OPM explained:

> In settlement of this appeal, OPM will suspend collection of the overpayment with no interest accruing until appellant begins receiving Civil Service annuity at which time OPM will reevaluate appellant's ability to repay the overpayments.

On appeal to the Board, Mr. Harris raised two arguments. First, he contended that he was entitled to receive DSR benefits and, thus, that there had been no overpayment. Board Decision at 2. In the alternative, he argued that he was entitled to waiver of the overpayment, pursuant to 5 U.S.C. § 8346(b)[3] and 5 C.F.R. § 831.1401,[4] "based on his detrimental reliance on the erroneous annuity payments and because recovery would both be unconscionable and cause him financial hardship." Id.

The Board rejected Mr. Harris's first argument, concluding that OPM had established by preponderant evidence "that [Mr. Harris's] removal for failure to complete and return paperwork required to obtain a Top Secret Security Clearance and Gold Security Badge was a 'removal for cause on charges of misconduct.'" Id. at 3–4. The Board determined that Mr. Harris was therefore ineligible for DSR benefits under section 8336(d)(1). Id. at 3. In its decision, the Board noted (1) that it possessed no

---

[3]    5 U.S.C. § 8346(b) provides:

Recovery of payments under this subchapter may not be made from an individual when, in the judgment of the Office of Personnel Management, the individual is without fault and recovery would be against equity and good conscience. . . .

[4]    5 C.F.R. § 831.1401 provides:

Recovery of an overpayment from the Civil Service Retirement and Disability Fund may be waived pursuant to section 8346(b), of title 5, United States Code, when the annuitant (a) is without fault and (b) recovery would be against equity and good conscience. . . .

independent discretion to grant retirement benefits that are not authorized by statute and (2) that the government cannot be estopped from denying benefits that are not authorized by statute.  Id. (citing Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 416, 434 (1990)).

Turning to Mr. Harris's second argument, the Board noted that OPM had not yet issued a final decision with respect to whether collection of the overpayment would be waived pursuant to 5 U.S.C. § 8346(b) and 5 C.F.R. § 831.1401.  Id. at 4.  Therefore, the Board determined that it lacked jurisdiction to consider that aspect of Mr. Harris's appeal.  Id.

We have jurisdiction over Mr. Harris's appeal pursuant to 28 U.S.C. § 1295(a)(9).

II.

Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.  5 U.S.C. § 7703(c); Kewley v. Dep't of Health & Human Servs., 153 F.3d 1357, 1361 (Fed. Cir. 1998).

We first address Mr. Harris's contention that his removal was not "for cause on charges of misconduct" within the meaning of section 8336(d)(1).  According to Mr. Harris, his understanding at the time was that he was being involuntarily removed as part of a reduction in force.  Mr. Harris argues that OPM asserted "for the first time" on August 11, 2005 that he was removed for cause on charges of misconduct.

We disagree. The Army made clear from the outset the nature of Mr. Harris's removal. In a letter to Mr. Harris dated May 18, 2001, one week before the effective date of his removal, the deciding official explained the Army's position:

> It is my decision to remove you from your position as Motor Vehicle Operator, WG-5703-07 and the Federal Service for: **Charge**: Failure to Complete And Return Paperwork to Obtain a Top Secret Security Clearance and Gold Security Badge by 31 December 2000.
>
> . . .
>
> Based upon the wide range of vehicular driver support and the sensitivity of the areas that the drivers access and passengers transported, the National Security Agency mandated that all drivers would obtain and maintain a Top Secret Security Clearance and Gold Badge. Without the Top Secret Security Clearance and Gold Badge, you cannot perform the duties of your position. You refused to sign a condition of employment acknowledging this requirement on 16 May 2000. You made no attempt to complete and return the security clearance paperwork.
>
> . . .
>
> I have concluded, based upon the information available to me, that your actions are without a valid or justifiable explanation. For these reasons, it is my decision that the reasons stated in the Notice of Proposed Removal are fully supported by a preponderance of the evidence and are sustained. . . .

Mr. Harris signed the letter from the deciding official, acknowledging his receipt thereof on May 18, 2001. The same reason for removal is reflected in the "Request for Personnel Action" (OPM Standard Form 52) filed in connection with Mr. Harris's removal. We therefore hold that substantial evidence supports the Board's ruling that Mr. Harris was, in fact, removed "for cause on charges of misconduct." Mr. Harris's arguments to the contrary are unavailing.[5]

---

[5] The question presently before us is whether Mr. Harris's removal was "for cause on charges of misconduct." To the extent that Mr. Harris challenges the propriety of the removal itself—e.g., by arguing that he was exempted from the enhanced security requirements—that challenge should have been made in 2001 upon his removal.

Next, we address Mr. Harris's due process argument. Specifically, Mr. Harris asserts that even if he was removed "for cause on charges of misconduct," the Army had a duty to notify him that, as a consequence of that removal, he would not be entitled to receive DSR benefits. We are not persuaded by Mr. Harris's argument. The requirements of due process are met when an employee receives notice of the <u>charges</u> and an adequate opportunity to respond. See <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 546 (1985) ("The essential requirements of due process . . . are notice and an opportunity to respond."). We discern no requirement that an employee must also be given notice of all of the <u>consequences</u> that will flow from his removal, such as loss of retirement benefits. Indeed, we have found that the publication of regulations in the Federal Register provides sufficient notice, for purposes of due process, of employees' rights and obligations. See <u>Stearn v. Dep't of Navy</u>, 280 F.3d 1376, 1384 (Fed. Cir. 2002) (finding that, even if petitioners had a protected property interest in certain retirement benefits, they were placed on notice of the requirements for obtaining those benefits by publication of the governing regulation in the Federal Register). At a minimum, Mr. Harris received constructive notice, through publication of 5 U.S.C. § 8336(d)(1),[6] that his "for cause" removal would result in a loss of DSR benefits.

Mr. Harris does not challenge the Board's jurisdictional ruling. Oral Arg. at 1:30–5:17, <u>available at</u> http://www.cafc.uscourts.gov/oralarguments/mp3/2007-3230.mp3. Therefore, we need not presently consider the issue of waiver under 5 U.S.C. § 8346(b)

---

Indeed, the removal letter received by Mr. Harris on May 18, 2001 informed him of his right to seek review of the decision through Negotiated Grievance Procedures within 10 days or to appeal to the Board within 30 days. There is no indication in the record that Mr. Harris elected to appeal his removal in 2001.

[6]     <u>See also</u> 5 C.F.R. § 842.206(b) (implementing 5 U.S.C. § 8336(d)(1)).

and 5 C.F.R. § 831.1401. We note, however, that Mr. Harris retains the right to challenge OPM's denial of waiver under those provisions if, and when, that ultimately occurs.[7]

Finally, although it is not entirely clear from his brief, Mr. Harris also appears to challenge the Board's determination that it lacked the authority to rule—independent of section 8346(b)—that collection of the overpayment should be waived. Mr. Harris raises a variety of equitable considerations that he contends merit a grant of waiver— e.g., his longstanding service with no other instances of disciplinary problems. We agree with the Board, however, that it lacked independent authority to rule that collection of OPM's overpayment of DSR benefits to Mr. Harris should be waived. Congress explicitly provided, in section 8346(b), the circumstances under which waiver may be granted. Neither the Board, nor this court, is permitted to grant waiver outside of that statutory framework. See Richmond, 496 U.S. 424–30 (holding that courts may not order the payment of funds from the Treasury absent statutory authorization, as doing so would violate the Appropriations Clause, U.S. Const. art. I, § 9, cl. 7). Mr. Harris attempts to distinguish Richmond on the basis that the funds in his case have already been disbursed from the Treasury. However, we find the distinction without merit. The logic of Richmond applies whether a court (1) positively orders OPM to pay money from the Treasury or (2) negatively restricts OPM from recovering money that was illegally paid. In either case, the court must act pursuant to the statutory framework set forth by Congress. Waiver must be considered under the rubric of section 8346(b), which, of course, provides for the consideration of equitable factors. Here, these

---

[7] At oral argument, the government agreed that Mr. Harris retains this right. Oral Arg. at 12:03–13:38.

equitable factors favor Harris since it was OPM that erroneously made the determination that Harris was entitled to receive DSR benefits.

For the foregoing reasons, the final decision of the Board is affirmed.

Each party shall bear its own costs.