NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**TONIA L. NOBLE,**
*Petitioner,*

v.

**DEPARTMENT OF JUSTICE,**
*Respondent.*

---

2012-3138

---

Petition for review of the Merit Systems Protection Board in case no. DE0432100423-I-2.

---

Decided: November 8, 2012

---

TONIA L. NOBLE, of Calexico, California, pro se.

JOSHUA A. MANDLEBAUM, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and KENNETH M. DINTZER, Assistant Director.

---

Before NEWMAN, LOURIE, and SCHALL, *Circuit Judges*.

PER CURIAM.

### DECISION

Tonia L. Noble petitions for review of the final decision of the Merit Systems Protection Board ("Board") that affirmed the action of the United States Department of Justice ("agency") removing her from her position as a Paralegal Specialist with the Office of the United States Attorney for the District of Arizona, Flagstaff Division. *Noble v. Dep't of Justice*, No. DE-0432-10-0423-I-2 (M.S.P.B. Sept. 28, 2011) ("*Final Decision*"). We *affirm*.

### DISCUSSION

### I.

Ms. Noble began work at the U.S. Attorney's Office in October of 2007. On December 28, 2009, Joseph Lodge, Ms. Noble's supervisor, gave Ms. Noble formal notice that her job performance was unacceptable and, as a result, placed her on a 90-day performance improvement plan ("PIP"). Under the PIP, Ms. Noble was required to demonstrate "successful" performance in several critical elements of her performance work plan ("Work Plan"). On April 8, 2010, following the end of the 90-day PIP period, Mr. Lodge proposed Ms. Noble's removal for unacceptable performance in Critical Elements 1 and 2: "Office Administrative Support" and "Special Projects." On May 7, 2010, after considering Ms. Noble's response to the removal notice, Assistant U.S. Attorney Ann Scheel, who served as the agency's deciding official in the matter, made the decision to remove Ms. Noble from her position, effective May 11, 2010.

Ms. Noble timely appealed her removal to the Board. Following a two-day hearing, the administrative judge

("AJ") to whom the appeal was assigned affirmed the agency's action. *Noble v. Dep't of Justice*, No. DE-0432-10-0423-I-2 (M.S.P.B. Apr. 11, 2011) ("*Initial Decision*"). The AJ determined that the agency had established by substantial evidence that it had provided Ms. Noble with valid performance standards and a reasonable opportunity to improve, and that Ms. Noble's performance had been unacceptable in the two indicated Critical Elements of her Work Plan. Ms. Noble petitioned the Board for review of the *Initial Decision*. On September 28, 2011, the Board denied the petition for review for failure to meet the criteria for review set forth in 5 C.F.R. § 1201.115(d). *Final Decision*. At that point, except to the extent modified by the discussion in the *Final Decision*, the *Initial Decision* became the final decision of the Board. This petition for review followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II.

Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c); *Kewley v. Dep't of Health & Human Servs.*, 153 F.3d 1357, 1361 (Fed. Cir. 1998). Ms. Noble raises several arguments on appeal. We address them in turn.

## A.

Ms. Noble contends that the performance standards in the PIP were "based on absolute standards" and, in any event, were not adequately communicated to her. Petitioner's Informal Brief filed July 19, 2012 ("Pet. Br.") at 2-6. We do not agree.

An agency may utilize an "absolute" performance standard—i.e., under which a single incident of poor performance will result in an unsatisfactory rating on a critical element—"so long as those standards are objective and tailored to the specific requirements of the position." *See Jackson v. Dep't of Veterans Affairs*, 97 M.S.P.R. 13, 17-18 (2004). The standard applied by the agency in this case, however, was not "absolute." Ms. Noble was not removed for a single incident of poor performance. Rather, as set forth in the notice of proposed removal, Respondent's Appendix ("Resp. App.") at 144-152, and the deciding official's decision, *id.* at 153-58, Ms. Noble's removal resulted from fifteen charged instances of deficient performance, twelve of which the AJ determined the agency had proved. *Initial Decision* at 19-29. As noted, Ms. Noble was removed from her position after she failed, during the PIP period, to meet the requirements of Critical Elements 1 and 2 of her Work Plan. Neither the PIP nor the Work Plan suggests that the standard for meeting the requirements of these elements was absolute. *See* Resp. App. at 110-17. In addition, Mr. Lodge testified that the U.S. Attorney's Office did not have a policy of zero tolerance for errors. Resp. App. at 9. For these reasons, the agency's standards were not absolute.

We also must reject Ms. Noble's claim that the performance standards in the PIP were not adequately communicated to her. The letter in which Ms. Noble received the PIP set forth the relevant elements of the Work Plan, gave nine examples of past unacceptable performance, and gave directions as to what Ms. Noble needed to do to improve her performance. *See* Resp. App. at 110-17.

B.

Ms. Noble also argues that she was not given a reasonable opportunity to improve her performance. This argument appears to rest upon two grounds. First, Ms. Noble claims that she lacked sufficient experience or training to succeed, Pet. Br. at 2-3, and that, during the PIP period, she was burdened with additional duties not listed in the PIP. *Id.* at 5. Second, Ms. Noble claims that she was subjected to a hostile work environment. *Id.* at 6-7. For the following reasons we reject this argument.

Ms. Noble's claim concerning training appears to be based, at least in part, upon the fact that, in February of 2010, while the PIP was in effect, Mr. Lodge denied her request to attend a training seminar on legal citation and research. In denying the request, Mr. Lodge stated: "I appreciate the fact that you want to improve your skills but I don't think this is the appropriate seminar. The bulk of your responsibilities have little to do with legal citation and research. I would, however, encourage you to find a government/private seminar [that] focuses on prioritization of duties and attention to detail." Resp. App. at 143. Mr. Lodge's denial and suggestion were consistent with Ms. Noble's circumstances. Neither Critical Element 1 or 2 of the Work Plan involved legal citation and research, *see Initial Decision* at 3-5, and Ms. Noble was not placed on the PIP because of any deficiencies in those areas. *See* Resp. App. at 112-115. Beyond that, Ms. Noble had been a paralegal since 2007 and had attended a paralegal training seminar. *Initial Decision* at 15. Moreover, Ms. Noble failed to establish that duties beyond those set forth in the PIP prevented her from meeting the requirements of the PIP. In that regard, the AJ noted that Ms. Noble did not testify that "performance of any of the duties she listed in response to [a September 4, 2009 email from Mr. Lodge] prevented her from per-

forming the duties on which her performance was measured during the PIP." *Initial Decision* at 18.

As noted, Ms. Noble also claims that, during the PIP period, she was subjected to a hostile work environment. Pet. Br. at 6-7. The evidence Ms. Noble cites does not support this contention, however. Four of the record citations to which she points simply reflect the agency emphasizing the importance of her improving her performance. The fifth record citation is to testimony of her supervisor, Mr. Lodge, in which he stated that the agency tried to "give [Ms. Noble] every tool that we could give her in order to succeed." In short, the evidence is in no way indicative of a hostile work environment.

## C.

Finally, we have considered Ms. Noble's challenges to the Board's findings of fact, which run throughout both her opening brief and her reply brief, as well as her reliance upon what she describes as "[n]ew and material evidence," Pet. Br. at 10. In our view, neither contention has merit. As far as the first point is concerned, the findings about which Ms. Noble complains were based largely upon credibility determinations by the AJ. In that regard, the AJ found the testimony of the agency's witnesses more credible than that of Ms. Noble. *See Initial Decision* at 14-18. The AJ, who has the opportunity to observe the demeanor of the various witnesses, is in the best position to determine their credibility. *See Leatherbury v. Dep't of the Army*, 524 F.3d 1293, 1304-05 (Fed. Cir. 2008). For that reason, the AJ's credibility determinations are "virtually unreviewable on appeal." *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002). As far as her purported "new and material evidence" is concerned, Ms. Noble has failed to show that the evidence was material and could not have been obtained earlier

with the exercise of due diligence. *See Brenneman v. Office of Pers. Mgmt.*, 439 F.3d 1325, 1328 (Fed. Cir. 2006).

### III.

For the foregoing reasons, the final decision of the Board is affirmed.

### AFFIRMED