NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DAVID LEOPOLD LOWENSTEIN,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2017-2358

---

Petition for review of the Merit Systems Protection Board in No. CH-1221-17-0108-W-1.

---

Decided: December 18, 2017

---

DAVID LEOPOLD LOWENSTEIN, Phoenix, AZ, pro se.

ROBERT C. BIGLER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., ALLISON KIDD-MILLER.

---

Before PROST, *Chief Judge,* MOORE, and REYNA, *Circuit Judges.*

PER CURIAM.

David Leopold Lowenstein appeals the decision of the Merit Systems Protection Board ("Board") denying him relief in his Individual Right of Action ("IRA") appeal. Because substantial evidence supports the Board's decision, we *affirm*.

## BACKGROUND

Dr. Lowenstein worked as a chiropractor for the Department of Veterans Affairs ("Agency") in the Iowa City VA Health Care System. He was terminated from his job because he engaged in persistent unprofessional behavior. He filed an IRA appeal alleging the Agency retaliated against him for protected whistleblowing activity. He alleged he made protected disclosures to his supervisors including that the Agency granted Dr. Bonavito-Larragoite, another Agency chiropractor, acupuncture privileges beyond the scope of her certifications; that Dr. Bonavito-Larragoite double billed a patient; and that Dr. Bonavito-Larragoite applied prescription lidocaine to a patient. He also alleged a complaint he filed with the Office of Special Counsel ("OSC") disclosing alleged Agency violations and a complaint he filed with the Arizona Board of Chiropractic Examiners after his termination constituted protected disclosures. The administrative judge ("AJ") denied his request for corrective action on two independent bases: Dr. Lowenstein failed to establish a prima facie case of whistleblower retaliation, and the Agency established by clear and convincing evidence that it would have terminated Dr. Lowenstein regardless of his disclosures.

The AJ determined Dr. Lowenstein failed to establish a prima facie case of whistleblower retaliation because his disclosures to his supervisors were not protected and the

OSC and Arizona complaints were not contributing factors to his termination. She found it was unreasonable for Dr. Lowenstein to believe reporting the Agency's grant of acupuncture privileges to Dr. Bonavito-Larragoite evidenced a protected disclosure under 35 U.S.C. § 2302(b)(8)(A) because the Agency had authority to set its own standards, Arizona regulations allowed for Dr. Bonavito-Larragoite's acupuncture privileges, and there was no evidence of a danger to patients. She found no evidence to support the allegations of double-billing. She found it was unreasonable to believe Dr. Bonavito-Larragoite acted outside the scope of her license when applying properly prescribed lidocaine to a patient because the medication could be applied by any person regardless of training or credentials. She found Dr. Lowenstein's OSC complaint was not a contributing factor to his termination because Dr. Lowenstein failed to show that the Agency officials responsible for the personnel actions had actual or constructive knowledge of the complaint. The AJ found the Arizona complaint could not have been a contributing factor because it was filed more than two weeks after Dr. Lowenstein's termination.

The AJ determined that even if Dr. Lowenstein had established a prima facie case of whistleblower retaliation, clear and convincing evidence showed that the Agency would have terminated him in the absence of the allegedly protected activity. The AJ found strong evidence of persistent unprofessional behavior, no evidence of retaliatory motive, and evidence that the Agency acts similarly against non-whistleblowers.

The initial decision became final pursuant to 5 C.F.R. § 1201.113, and Dr. Lowenstein timely petitioned this court for review. We have jurisdiction under 5 U.S.C. § 7703(b)(1)(B) and 28 U.S.C. § 1295(a)(9).

DISCUSSION

The Whistleblower Protection Act ("WPA") protects government employees from retaliation for protected disclosures. *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1326 (Fed. Cir. 1999). Employees bear the burden of showing that a protected disclosure was a contributing factor in a personnel action. 5 U.S.C. § 1221(e)(1). If the employee establishes a prima facie case of whistleblower retaliation, the burden shifts to the agency "to show by clear and convincing evidence that it would have taken 'the same personnel action in the absence of such disclosure.'" *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1364 (Fed. Cir. 2012) (quoting 5 U.S.C. § 1221(e)(2)). In determining whether the agency met its burden, the Board considers:

> the strength of the agency's evidence in support of its personnel action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.

*Carr*, 185 F.3d at 1323. We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

As an independent basis for denying corrective action, the AJ found the Agency proved by clear and convincing evidence that it would have terminated Dr. Lowenstein in the absence of his disclosures. On appeal, Dr. Lowenstein makes few challenges to the AJ's findings regarding this independent basis. Instead, he focuses on evidence supporting his prima facie case of whistleblower retaliation. For example, he cites to portions of the Arizona Adminis-

trative Code and the Veterans Health Administration Handbook and refers to conversations he had with colleagues to argue that the Agency granted Dr. Bonavito-Larragoite privileges outside the scope of her credentials. He argues he told multiple Agency employees about his OSC complaint. He explains his frustration with the lack of guidance from the Agency regarding privileging standards. But these arguments do not address the substantial evidence supporting the AJ's finding that the Agency would have terminated him regardless of these disclosures. We affirm the AJ's decision because an independent and largely unchallenged basis to affirm the AJ's decision exists. *Kewley v. Dep't of Health & Human Servs.*, 153 F.3d 1357, 1364 (Fed. Cir. 1998).

Substantial evidence supports the AJ's finding that strong evidence independent of Dr. Lowenstein's disclosures supports the Agency's decision to terminate him. The AJ recites numerous examples of Dr. Lowenstein's unprofessional conduct toward Dr. Bonavito-Larragoite and insubordination toward his superiors. His supervisors and representatives from Human Resources made repeated attempts to intervene, but substantial evidence shows that this pattern of behavior continued from August 2014 until his termination. Prior to the Professional Standards Board ("PSB") convening to review his employment, Dr. Lowenstein apologized to his supervisors and Dr. Bonavito-Larragoite for his past behavior. Dr. Lowenstein argues that a proficiency report rated his performance as satisfactory, testimony from other employees at his clinic would not have corroborated the Agency's evidence, and he and Dr. Bonavito-Larragoite were cooperating from April 2015 until his termination. But a different evaluation from July 2015 rated his general cooperation and attitude with the health care team as unsatisfactory. We cannot reweigh the evidence on appeal.

Substantial evidence also supports the AJ's finding that the Agency officials involved in the personnel action lacked motive to retaliate. No evidence suggests the PSB members knew who Dr. Lowenstein was prior to his review or that any Agency officials had a motivation to retaliate against him. On the contrary, the evidence shows the Agency gave Dr. Lowenstein opportunities to improve his conduct and ensure his grievances went through the proper chain of command. The record contains substantial evidence that Dr. Lowenstein's unprofessional conduct continued. Dr. Lowenstein argues that the Agency showed retaliatory animus when it removed the only medical physician from the PSB and replaced him with another chiropractor. He also argues the PSB did not interview any Agency employees that would have testified in his favor. There is no evidence in the record to suggest these actions demonstrate a motivation to retaliate.

Finally, substantial evidence supports the AJ's finding that the Agency has taken similar actions against similarly situated employees who were not whistleblowers. The Agency identified four former Agency employees terminated for workplace misconduct during their probationary period, none of whom asserted whistleblower claims. The AJ found that there was no proof the Agency treated non-whistleblowers differently. Dr. Lowenstein argues that other Agency employees were involved in e-mail discussions regarding acupuncture privileging but were not similarly admonished. This does not override the substantial evidence in favor of the AJ's findings.

We do not reweigh evidence on appeal. Because substantial evidence supports the AJ's findings regarding each *Carr* factor, we affirm his conclusion that the Agency did not violate the WPA when it terminated Dr. Lowenstein's employment. We do not reach whether Dr. Lowenstein's disclosures were protected or were a contributing factor to his termination.

CONCLUSION

For the reasons stated above, the decision of the Board is *affirmed*.

**AFFIRMED**

COSTS

No costs.