NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JOCELYN LISA DOYLE,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2019-2149

---

Petition for review of the Merit Systems Protection Board in No. PH-1221-18-0012-W-3.

---

Decided: May 14, 2021

---

DEBRA D'AGOSTINO, The Federal Practice Group, Washington, DC, for petitioner.

JANA MOSES, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by CLAUDIA BURKE, JEFFREY B. CLARK, ROBERT EDWARD KIRSCHMAN, JR.

---

Before O'MALLEY, REYNA, and HUGHES, *Circuit Judges.*

Opinion for the court filed by *Judge* REYNA.

*Circuit Judge* HUGHES dissents.

REYNA, *Circuit Judge.*

Ms. Jocelyn Doyle appeals a decision from the Merit Systems Protection Board that affirmed the Department of Veterans Affairs's denial of her request for corrective action in connection with her whistleblower complaint. The Board determined that although Ms. Doyle had made whistleblower protected disclosures and that the agency had at least a slight motive to retaliate against her, the Department of Veteran Affairs established that it would have taken the same action in the absence of those protected disclosures. Because the Board erred in that determination, we reverse.

BACKGROUND

Ms. Doyle joined the Department of Veterans Affairs ("VA") on July 26, 2015, as a dental assistant ("DA"). Prior to November 2016, Ms. Doyle received praise and an award for her performance and team participation. *See, e.g.*, J.A. 264 (emails to Ms. Doyle stating, "let me mention again what a wonderful job you are doing," and "I can't thank you enough for your efforts and enthusiasm since you began with us.").

In early December 2016, Ms. Doyle met with a Safety Officer to express her concern that members of the dental clinic were removing used surgical razor blades and scalpels from medical tools with their fingers, which she claimed created a health and safety risk ("Razor Blades Disclosure"). J.A. 72. Ms. Doyle later testified that, although the department and its leadership were aware of the issue for six months previously, the DAs were still removing the blades with their fingers, so she notified the Safety Officer about the practice. J.A. 274. Members of Ms. Doyle's department, including her Administrative Officer, Ms. Moody, and other DAs, were agitated that Ms. Doyle

went "outside her chain of command" to report this safety concern and that it made the department "look bad." *See, e.g.*, J.A. 73, 77–78. Numerous emails were exchanged between staff and management regarding Ms. Doyle and her actions alleging that she was "unstable" and creating a "toxic work environment." J.A. 79–81, 85–86, 87, 88.

On December 27, 2016, Ms. Doyle filed a complaint with the U.S. Office of Special Counsel ("OSC") alleging whistleblower reprisal. J.A. 93, 115. From that point on, she kept the OSC informed of developments, including her subsequent reassignments to other departments. J.A. 90–148, 105, 122.

In early January 2017, Ms. Doyle reported to Dr. McCutcheon, one of her directors, concerns involving Dr. Kevin Patel, a department dental resident. Specifically, she claimed that he was not wearing sterile gloves during surgery and exhibited poor patient care, including unnecessary removal of bone during an extraction ("Patel Disclosure"). Appellant Br. 10–11; J.A. 157–159. She drafted an email about her concerns, *see* J.A. 157–58, but Ms. Doyle alleges Dr. McCutcheon told her that she did not need to send it. Appellant Br. 10–11. Once Dr. Patel was informed of Ms. Doyle's complaint, he met with Ms. Moody. This led to a discussion between Dr. McCutcheon and Dr. Miller, the Dental Service Chief. J.A. 162.

Around the same time, Ms. Doyle expressed to Dr. Miller dissatisfaction with her performance appraisal. J.A. 265. Dr. Miller later testified that the two discussed her self-assessment and that he modified her appraisal rating from "fully satisfactory" to "excellent," stating, "I'll give [Ms. Doyle] credit where credit is due." *Id.*

On February 1, 2017, Ms. Moody sent an email informing Human Resources that Dr. Patel was writing a complaint about Ms. Doyle which Ms. Moody intended to send to Ms. Moody's superiors. J.A. 184–185. Dr. Miller and Ms. Moody reviewed Dr. Patel's draft complaint before it

was filed.  J.A. 220.  The next day, Dr. Patel submitted the complaint to Ms. Moody in which he alleged that Ms. Doyle neglected her patients while checking her email, had confrontations with other employees, put patients at risk of serious injury, acted aggressively in front of patients, and frequently documented her experiences in the clinic. J.A. 170–180, 181.

### AIB Investigation

Dr. Patel's complaint led to an Administrative Investigation Board ("AIB") investigation.[1]  The AIB investigation was ordered by Timothy Cook, Medical Center Director, Martinsburg, West Virginia.  Three individuals were appointed to the AIB: Dr. James Regan, Physician, Surgical Services Chair; Richard Coffinbarger, Quality Management; and Jennifer Riggs, Dental Hygienist.  The AIB was also staffed with a professional investigator and an individual for administrative and logical support.  J.A. 170.

The AIB was tasked with investigating allegations concerning whether Ms. Doyle had engaged in: (a) incidents of patient abuse, mistreatment or neglect; (b) violation of patient treatment procedures and protocols; (c) bullying, disrespectful, insulting, abusive, or obscene language or conduct; and (d) refusal to carry out supervisors' or physicians' orders or willful resistance to the same.  J.A. 262.

The AIB was mandated to determine the following facts or findings: (a) whether there is conclusive evidence the allegations occurred, (b) the time periods during which the alleged infractions occurred, and (c) mitigating

---

[1]    The VA may utilize an AIB to collect evidence and determine facts regarding alleged employee misconduct. U.S. GOV'T ACCOUNTABILITY OFF., GAO-12-483, VA ADMINISTRATIVE INVESTIGATIONS (2012), at p. 1.  The AIB conducts investigations and its findings can be used to inform corrective actions.  *Id.*

circumstances that may have affected the employees actions.  J.A. 170.

The AIB held a Preliminary Review Panel meeting on February 6, 2017.  J.A. 266.  The Facility Compliance Officer asked Dr. Miller why there was no progress note for a patient whom Ms. Doyle had allegedly abused, in direct violation of a VA rule that requires progress notes to be filed within twenty-four hours of diagnostic or therapeutic procedures.  *Id.*  Forty-seven minutes after this meeting, Dr. Patel started, completed, and signed a progress note for the incident.  *Id.*  He later testified to the AIB that both Ms. Moody and Dr. Miller reviewed the draft progress note prior to Dr. Patel signing it.  J.A. 267.

At the AIB hearing, Dr. Patel testified consistent with the allegations in his complaint, but on his last day of employment with the VA, Dr. Patel reversed positions and stated under oath that he did not believe Ms. Doyle should lose her license because she did not intentionally harm or pose a risk to patients.  J.A. 220.  Further, under oath on his last day, Dr. Patel said he "felt like a pawn with respect to writing this complaint" because Ms. Moody "encouraged him to document everything and [she and Associate Supervisor Ms. Sowers] want [dental] residents to file the complaints because their residency is only a year and then they leave."  *Id.*  He stated that Ms. Moody and Ms. Sowers told another resident to "start documenting things against [two other DAs] and then [the dental resident] will file an AIB complaint."  *Id.*  He later testified before the Board that his initial AIB testimony consistent with his complaint was in fact truthful.  J.A. 222.

Notably, during the AIB investigation, Ms. Doyle was reassigned once to the mailroom and then to the library.  J.A. 226, 229.  When the AIB asked her in June 2017 whether she wanted to return to the Dental Service department, she said she did not.  J.A. 263.

The AIB issued its report on July 27, 2017, finding that there was "no credible evidence" as to the first three allegations in Dr. Patel's complaint: (a) patient abuse, mistreatment or neglect; (b) violations of patient safety protocols and polices; and (c) bullying, disrespectful, insulting, abusive, insolent, or obscene language or conduct. J.A. 275. Specifically as to the Razor Blades Disclosure, the AIB stated that "it does not appear this was insubordination," and that the AIB noted that a new procedure was implemented "only after Ms. Doyle notified Safety." J.A. 274. As to the fourth allegation, the AIB found "minimal evidence that Ms. Doyle may have refused to carry out supervisor or physician orders." J.A. 231.

The AIB also determined that the dental department was not a healthy environment for Ms. Doyle and, as a result, she was reassigned in September 2017 to the Medical Service Department. The AIB found that "an unhealthy environment was allowed to fester in Dental Service with [Ms. Doyle] being the unfortunate 'target.'" J.A. 276. The AIB in turn recommended that another, separate AIB should be empaneled to investigate dental service management and conduct. Specifically, the AIB made findings that the AIB investigation was retaliatory and manipulative in order to get rid of Ms. Doyle:

The AIB members believe Ms. Moody may have orchestrated this AIB [investigation] in an effort to 'get rid of' Ms. Doyle for personal reasons. Certainly, (altering and editing) another individual's AIB complaint is inappropriate to say the least when Ms. Moody had no first-hand knowledge of the events, and how Dr. Patel could compromise his integrity by signing the document and recanting his statement when under oath is quite telling. The AIB members believe that Dr. Miller allowed Ms. Moody to manipulate facts, and corrupt other individuals' opinions regarding Ms. Doyle.

*Id.* The AIB also recommended team-building training, proper leadership and management training, and reconsideration as to Ms. Doyle's position and job placement. *Id.*

### Merit Systems Protection Board Decision

On October 7, 2017, Ms. Doyle filed a pro se Individual Right of Action before the Merit Systems Protection Board ("Board") requesting corrective action. J.A. 1–42. The Board refers to this appeal as "Doyle 2," since Ms. Doyle was involved in a concurrent appeal dubbed "Doyle 1" that dealt with her removal from her latest position and also included a defense of whistleblower retaliation. J.A. 6. Although the Board states that "evidence for these [two cases] – whether presented as retaliatory personnel actions or incidents evidencing retaliatory animus – were largely the same," it did not allow Ms. Doyle to recall witnesses from Doyle 1 in Doyle 2, finding that she "failed to make an adequate showing . . . to justify" doing so. *Id.* The parties were permitted, however, to cite to the record of Doyle 1 during Doyle 2. J.A. 14. The Board states that its rulings from Doyle 1 "are essentially law of [Doyle 2]," but the Board fails to summarize those rulings. J.A. 7.

The Board decided that some of Ms. Doyle's disclosures could be "fairly deemed whistleblower disclosures under 5 U.S.C. § 1201(b)(8), while some cannot." J.A. 14. Likewise, the Board determined that the protected disclosures were a significant contributing factor in the personnel actions taken against Ms. Doyle; "[A]ll the challenged personnel actions occurred within a sufficiently short time to trigger the knowledge-timing test," a test used to determine if a disclosure was a contributing factor in an agency's decision to take an adverse personnel action, J.A. 18.

The Board examined the alleged personnel actions, J.A. 20–33, and concluded that the "evidence readily established [by a clear and convincing standard] that the complained of actions were not personnel actions (for purposes of 5 U.S.C. § 2302(a)(2)), or the agency took no wrongful

action, and/or the agency would have taken the same action" absent the disclosure, J.A. 19.

The Board reviewed the record evidence and noted that dental staff thought Ms. Doyle was "ruining [the dental department], embarrassing [the dental department], toxic, and should stay in her chain of command." J.A. 19. The Board determined that "there [was] at least a slight motive to retaliate on the part of the dental managers/supervisors." J.A. 20. But the Board explained that the "decisive factor" was the agency's evidence supporting its decision, which the Board found "overwhelming[ly] . . . outweighed any motive to retaliate, and readily established that the agency would have taken the same action in the absence of the protected activity[.]" J.A. 20.

As to the AIB investigation, the Board discounted in total the results of the AIB investigation on grounds that the AIB investigation was not a qualifying personnel action. *See* J.A. 24 (citing *Mastrullo v. Dep't of Labor*, 123 M.S.P.R. 110 (M.S.P.B. 2015)). In addition, the Board rejected the findings of the AIB on the basis that the findings were contradicted by the testimony of Dr. Regan, head of the AIB, and Ms. Doyle's supervisors, who were interviewed during the AIB investigation. For example, the Board credited Ms. Moody's testimony over the finding of the AIB that she did not write or amend Dr. Patel's complaint and that Dr. Patel wrote the complaint himself. J.A. 25. The Board accepted Dr. Patel's explanation that he was "uncertain" why he told the AIB that he felt like a pawn, that he most likely said that to avoid getting involved, and that he was trying not to compromise Ms. Doyle's career. J.A. 25–26. The Board found that the AIB "may have misread Ms. Moody's AIB testimony as a personality conflict," since she expressed frustration with Ms. Doyle. J.A. 26. The Board noted that "[Ms. Moody's] expressed enthusiasm is not akin to a vendetta." J.A. 26. The Board further found, contrary to the AIB's finding, that the AIB also appeared to believe there was no vendetta against

Ms. Doyle, but rather just a failure by management "to nip problems in the bud with communication and discipline." J.A. 26–27. The Board also rejected the AIB's findings because, it alleged, the agency's failure to form an AIB (as recommended) to investigate Ms. Doyle's supervisors meant that "the agency viewed certain recommendations with a grain of salt[.]" J.A. 10 n.9. The Board cited no evidence in support of this assertion, nor did it explain why it accepted testimony from individuals it found to have motive to retaliate.

The Board also cited testimony from Dr. Regan. Dr. Regan apparently testified on his own behalf, and not on behalf of the AIB. Still, the Board accepted his testimony as discrediting the very findings made by the AIB, on which he sat as chairman:

> Notably, Regan testified: (1) the panel could not sustain the first three charges; (2) he found Patel credible; (3) the underlying basis of the AIB was valid (e.g. not a bogus complaint) and everyone involved had good intentions; (4) there is a difference between an unstained charge and a bogus one; (5) he never believed the investigation was retaliatory; (6) management was ill-equipped to deal with a "strong personality" like the appellant; (7) the issue with Patel was his change of heart on whether the appellant's action was deliberate; (8) Moody had a personality conflict with the appellant; (9) clinic notes are frequently changed after the fact; (10) Patel was ending his residency and just wanted to leave; (11) the reference to the appellant as the "unfortunate target" generally referred to the unproven charges; (12) the panel was aware Moody or Miller could have edited the chart note, and that was simply a concern; (13) there was no "finding" that Moody manipulated anything from Patel; and (14) there was no evidence Moody was engaging in a vendetta.

J.A. 24 (emphasis in original).  The Board's decision became final on August 3, 2019, J.A. 33, and Ms. Doyle timely appealed to this court.  We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

On appeal, Ms. Doyle argues that the Board erred in its determination that the AIB investigation was not a qualifying personnel action, and its determination that the agency proved it would have taken the same action in the absence of the protected disclosures.  Ms. Doyle also challenges the VA's assertion that she waived any arguments that her job reassignments constituted qualifying personnel actions.

Our review authority of Board decisions is limited.  We review Board decisions to determine if a decision is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).  A Board decision is supported by substantial evidence if the record contains "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Crepeau v. Dep't of Labor*, 245 F. App'x 16, 18 (Fed. Cir. 2007) (citation omitted).

As petitioner, Ms. Doyle bears the burden of establishing, by a preponderance of the evidence, a prima facie case that she made a protected disclosure and that the disclosure was a "contributing factor" in the agency's decision to take a personnel action against her.  5 U.S.C. § 1221(e)(1); *Kewley v. Dep't of Health & Human Servs.*, 153 F.3d 1357, 1363 (Fed. Cir. 1998).  If a prima facie case is made, the burden shifts to the agency to show, by clear and convincing evidence, "that it would have taken the action even in the absence of the protected disclosure." *Kewley*, 153 F.3d at 1363.

### Protected Disclosures

The Board determined that some of Ms. Doyle's communications could be "fairly deemed whistleblower disclosures under 5 U.S.C. § 1202(b)(8)[.]"  J.A. 14; *see also* J.A. 18 (finding that "at the very minimum" the Razor Blades Disclosure was a protected disclosure).  We agree and affirm that portion of the Board's determination that Ms. Doyle made protected disclosures.

### Contributing Factor

The Board also determined that Ms. Doyle satisfied the "knowledge/timing" test.  J.A. 18.  Under this test, a whistleblower is required to demonstrate that a protected disclosure was a "contributing factor" to the alleged adverse personnel action.  The whistleblower must, by a preponderance of evidence, demonstrate that (1) "the official taking the personnel action knew of the disclosure" and (2) "the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure . . . was a contributing factor in the personnel action." 5 U.S.C. § 1221(e)(1); *see also Kewley*, 153 F.3d at 1361–63.

There is  no dispute that the knowledge-timing test is satisfied in this case.  J.A. 18.  It is undisputed that Ms. Doyle's supervisors knew of the Razor Blades Disclosure and the Patel Disclosure (knowledge), and the AIB investigation was initiated a mere two months after her disclosure (timing).  We therefore agree and affirm that portion of the Board's decision finding that Ms. Doyle's protected disclosures were a contributing factor to the challenged personnel actions.

### Adverse Personnel Action

The VA asserts that although Ms. Doyle made protected disclosures and proved that the disclosures were a contributing factor, the personnel actions central in this case are not *qualifying* adverse personnel actions under the

statute.[2]  J.A. 24–27.  In addition, the VA argues that Ms. Doyle has waived any argument that her reassignments constitute adverse actions.  We first address the waiver issue.

## Waiver

It is undisputed that Ms. Doyle was reassigned job responsibilities and duties several times.  In fact, the record evidence establishes that Ms. Doyle was reassigned three times.  The VA asserts, however, that Ms. Doyle has waived any argument that the reassignments qualify as adverse personnel actions because she "failed to present those alleged personnel actions for the [Board's] consideration." Appellee Br. at 13.  We disagree.  Ms. Doyle raised her reassignments in her submissions to the OSC, J.A. 105, 122; before the Board in her initial appeal forms, J.A 242; and in her closing argument at the Board hearing, J.A. 1377. That the Board chose not to list the reassignments as a personnel action at the prehearing conference and chose not to address them at the hearing does not render them waived. Ms. Doyle was acting pro se and states that she had no reason to suspect her claims would not be part of her appeal. Appellant Reply Br. 5.  An issue raised before the Board is preserved for appeal "unless the appellant has knowingly abandoned or waived the issue." *Bosley v. Merit Sys. Prot. Bd.*, 162 F.3d 665, 668 (Fed. Cir. 1998).  We see nothing in the record that shows that Ms. Doyle knowingly abandoned or waived the reassignment issue.  We therefore conclude that Ms. Doyle has not waived her reassignment arguments.

Ms. Doyle argues that the Board's conclusion that the AIB investigation does not qualify as an adverse personnel action is contrary to law.  This court has held that an investigation of an employee, without more, is not a

---

[2]    5 U.S.C. § 2302(a)(2).

qualifying personnel action. *See Sistek v. Dep't of Veterans Affairs*, 955 F.3d 948, 955 (Fed. Cir. 2020). But "a retaliatory investigation, either on its own or as part of a broader set of circumstances, may qualify as a personnel action if it rises to the level" of a "significant change in duties, responsibilities, or working conditions." *Id.*, 5 U.S.C. § 2302(a)(2)(A)(xii).

As noted above, there is no dispute that Ms. Doyle had several significant changes in job duties and responsibilities as well as working conditions. During the course of the AIB investigation, Ms. Doyle was reassigned from her job as a DA to the mailroom, and then to the library. She was reassigned a third time as a direct result of a recommendation made by the AIB in its investigation report. J.A. 5, 237. As such, the AIB investigation was the direct cause for at least one change in Ms. Doyle's change in duties.

The record evidence establishes that the AIB investigation was retaliatory, either on its own or as part of a broader set of circumstances. Indeed, the circumstances surrounding the AIB investigation are unusual for several reasons. First, the AIB investigation was initiated upon a complaint submitted by Dr. Patel in which he raises serious allegations against Ms. Doyle. *See* J.A. 262 ("This entire Administrative Investigative Board was precipitated by a complaint from Dr. Kevin Patel[.]"). Second, Dr. Patel is a subject of Ms. Doyle's protected disclosures. *See* J.A. 157–58. Third, Dr. Patel presented conflicting (reversal) testimony. Fourth, the AIB investigation report asserts that the investigation was a manipulation by Ms. Doyle's supervisors as a means to "get rid" her. J.A. 276. Fifth, the AIB determined that Ms. Doyle's supervisors reviewed Dr. Patel's complaint before he submitted it. Sixth, the AIB suggested in its investigation report that a separate AIB should be empaneled to investigate the actions taken by Ms. Doyle's supervisory and managerial staff. Seventh, the atmosphere and work environment in Ms. Doyle's dental unit had been rendered so toxic and adverse against Ms.

Doyle that it was not prudent to return her to her former DA position and therefore it was recommended she be re-assigned (for a third time). Eighth, the AIB determined that almost all the allegations brought against Ms. Doyle were not credible and were not substantiated by evidence.[3]

The VA urges this court to disregard the findings of the AIB on grounds that the Board determined that the AIB findings were contradicted by Dr. Regan, chair of the AIB. We refuse the invitation to affirm the Board's decision to toss out AIB factual findings on the basis of Dr Regan's testimony. Dr. Regan testified before the Board—apparently on his own behalf and not on behalf of the AIB—and generally discredited each of the AIB's findings. He testified that the parties had good intentions, that personality differences were at fault, and that manipulation (by Ms. Doyle's supervisors) was not proven. J.A. 24.

Dr. Regan's testimony is little more than unsupported post hoc rationalizations. On the other hand, the AIB investigation process is a tool that the agency wields to investigate and address serious issues of safety, health care, abuse of patients, and institutional management. In this case, the VA empaneled the AIB and charged it to investigate serious allegations brought against Ms. Doyle. The AIB collected evidence and heard from fourteen witnesses. And, as required by its mandate, the AIB made specific findings of fact which it set out in its report. J.A. 276. We find no basis in the record to conclude that the AIB failed

---

[3]    *See* J.A. 276 (finding no credible evidence to support the allegations of patient abuse, mistreatment or neglect; violations of patient safety protocols and policies; or bullying, disrespectful, insulting, abusive, insolent, or obscene language or conduct; and finding "minimal evidence" to support that Ms. Doyle refused to carry out orders).

in its mission, or that its specific findings are discredited, including by Dr. Regan's testimony.

The VA's position in this case is strikingly incredible. The VA argues that we should hold that the Board correctly discredited the agency's own investigation based on Dr. Regan's conclusory, unsupported testimony. For example, the AIB found that Dr. Miller permitted Ms. Moody to turn the dental unit against Ms. Doyle; in response, the Board notes that Dr. Regan testified that the department got along. The AIB investigation uncovered actions and conduct by supervisors which it recommended be addressed in a separate AIB investigation; in response, Dr. Regan says that such actions were never proven. But Dr. Regan does not challenge the AIB's specific findings that the allegations brought against Ms. Doyle were not credible and were unsubstantiated with evidence. Further, the VA does not point to any findings by the Board that the AIB was improperly empaneled, acted outside its authority or was otherwise illegal. For these reasons, we reject the VA's argument that the AIB report was properly rejected by the Board.

Based on the foregoing circumstances, we conclude that the AIB investigation was a retaliatory investigation closely related to at least one reassignment. *Russell v. Dep't of Justice*, 76 M.S.P.R. 317, 323–24 (M.S.P.B. 1997) ("The Board will consider evidence regarding the conduct of an agency investigation when the investigation was so closely related to the personnel action that it could have been a pretext for gathering evidence to retaliate against an employee for whistleblowing activity."). We therefore hold that the Board's legal conclusion that the AIB investigation was not a qualifying personnel action was contrary to law. Consequently, the burden shifts to the agency to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure. *Kewley*, 153 F.3d at 1363.

Agency's Burden

We review the question of whether the agency would have taken the same adverse personnel action absent the protected whistleblower disclosures in light of three non-exclusive factors known as the *Carr* factors: (1) "the strength of the agency's evidence in support of its personnel action"; (2) "the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision"; and (3) "any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." *Carr v. Social Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). Evidence must leave the Board with a "firm belief" that the personnel action would have still taken place if not for the disclosure. *Newby v. E.P.A.*, 135 F.3d 777 (Fed. Cir. 1998).

The VA argues that the Board's determination that the VA's decision to conduct an AIB investigation (*Carr* factor one) is based on evidence that "far outweighed" any motive to retaliate. J.A. 20. We disagree. The problem here for the VA is that the reasons it cites for taking the adverse personnel actions (the AIB investigation and reassignments) were expressly found to be lacking credibility and not substantiated with evidence. The single allegation that the AIB found to be partially substantiated, that Ms. Doyle may have refused to carry out supervisor or physician orders, is not cited by the Board as sufficient to initiate the investigation or to compel the reassignments. We therefore conclude that *Carr* factors one and two favor Ms. Doyle.[4]

As to *Carr* factor three, Ms. Doyle argues that the Board's conclusion that the agency would have taken the

---

[4]　As noted above, we agree with the Board that the record reflects motive to retaliate (*Carr* factor two). We affirm the part of the Board determination finding motive under the second *Carr* factor.

same personnel action against similarly situated employ-ees absent protected disclosures was erroneous. *Id.* We agree.

The Board's analysis of *Carr* factor three was to simply state, "No one appears to have ever conducted themselves as the appellant did[.]" *Id.* This is contrary to law. Where comparator evidence exists, "the agency is required to come forward with all reasonably pertinent evidence." *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1374 (Fed. Cir. 2012). Here, the record reflects that potential comparator evidence exists.[5] But instead of reviewing this evidence, the Board simply chose not to conduct a comparator analysis because it alleged no one ever acted like Ms. Doyle.

The VA asserts that Dr. Patel's testimony was devoid of "any evidence that he observed other dental assistants injuring patients resembling his observation of Ms. Doyle's conduct, which prompted his complaint," and therefore other DAs are not comparable to Ms. Doyle. Appellee Br. 33–34. This is error. The VA ignores that the AIB

---

[5]   The record evidence demonstrates that during the AIB investigation, Dr. Patel was asked about previous assistants that he did not consider "good assistants." J.A. 217. He spoke of Theresa Scott, with whom "everyone ha[d] an issue," to the point Dr. Miller "wouldn't work anymore with her." *Id.* In fact, Dr. Patel testified, "they had to kick her out of his clinic and [she had to] go somewhere else." *Id.* Dr. Patel also discussed Sherri Napier, who was "kind of the same way" and with whom he "definitely had issues." *Id.* After Ms. Sowers insinuated that she might be let go, Ms. Napier was given a chance to "turn[] it around." *Id.* at 217–18. Lastly, Dr. Patel mentioned Ella Clevenger who "doesn't even show up half the time . . . [and] doesn't really want to work too much." *Id.* at 218. No evidence was presented that any of these previous assistants underwent an AIB investigation.

investigation concluded there was no credible evidence of patient abuse. J.A. 4. In addition, Dr. Patel testified that Ms. Doyle did not abuse or otherwise endanger patients.

"Similarly situated" employees can be those with similar job status, duties, responsibilities, years of service—but who were not whistleblowers. *See Whitmore*, 680 F.3d at 1373 (comparing two individuals that were "both in supervisory positions within the same branch of the same department," "operated within the same chain of command," and were similar "from an employment position and responsibility perspective"). The focus of the inquiry is on agency actions taken against similarly situated employees that were not whistleblowers. But here the VA fails to ask and answer this question. As such, the agency fails to prove by clear and convincing evidence that it would have taken the same adverse personnel action against a similarly situated employee absent protected disclosures by that employee.

Ms. Doyle's case is comparable to *Chambers v. Dep't of the Interior*, where the agency did not prove by clear and convincing evidence that it would have taken the same action. 116 M.S.P.R. 17, 56–57 (M.S.P.B. 2011). There, the Board found that a motive to retaliate existed and that the agency lacked evidence that it took similar actions against similarly situated non-whistleblowers. *Chambers*, 116 M.S.P.R. at 56–57 (stating that "we are simply not left with a 'firm and definite conviction'" in large part because the agency "did not show that it took similar actions against similarly situated non-whistleblowers").

The VA cites to *Whitmore* in support of its contention that it did not need to provide evidence as to *Carr* factor three; rather a lack of evidence as to that factor would "effectively remove [the factor] from the analysis." Appellee Br. 33 (citing *Whitmore*, 680 F.3d at 1374). The VA misapprehends *Whitmore*.

In *Whitmore*, the Board did not conduct a comparator analysis because it believed the only comparable employee, Mr. Dubois, was not similarly situated to Mr. Whitmore, because Mr. Dubois, unlike Mr. Whitmore, was not the instigator or the one who threatened physical violence. *Whitmore*, 680 F.3d at 1372. We held that the Board's reading of "similarly situated" was too narrow. *Id.* at 1372–73. We explained that, where evidence as to *Carr* factor three exists, "the agency is required to come forward with all reasonably pertinent evidence." *Id.* at 1374. Failure to do so "may be at the agency's peril" because "the absence of any evidence concerning *Carr* factor three may well cause the agency to fail[.]" *Id.*; *see also Russell*, 76 M.S.P.R. at 327–328 (weighing the three *Carr* factors to find that the agency did not meet its burden where "strong evidence to support their reports concerning the appellant" was outweighed by a motive to retaliate and a lack of comparable treatment of non-whistleblowers).

In view of the record evidence concerning the three *Carr* factors, we hold that the Board's conclusion that the strength of the agency's evidence supporting the personnel actions outweighs any motive to retaliate is unsupported by substantial evidence and is otherwise contrary to law. *See* J.A. 217–18; *supra* n.5.

We hold that the Board's decision is unsupported by substantial evidence and otherwise contrary to law as to its determinations that: (i) the AIB investigation did not constitute an adverse personnel action, and (ii) that the VA would have conducted an AIB investigation of Ms. Doyle absent the whistleblower disclosures.

## CONCLUSION

The court has considered the parties' remaining arguments and does not find them persuasive. The decision of the Board is reversed.

## **REVERSED**

COSTS

Costs to the petitioner.